**STATE OF HAWAII, Plaintiff,**

v.

**STANDARD OIL COMPANY OF CALIFORNIA, Union Oil Company of California, Shell Oil Company, and Chevron Asphalt Company, Defendants.**

**Civ. No. 2826.**

United States District Court
D. Hawaii.

July 2, 1969.

See also D.C., 301 F.Supp. 980.

Bert T. Kobayashi, Atty. Gen. of Hawaii, Gilbert K. Hara, Joseph Kinoshita, Deputy Attys. Gen., Dept. of the Attorney General, Honolulu, Hawaii, Law Offices of Joseph L. Alioto, Joseph L. Alioto, Maxwell M. Blecher, Francis O. Scarpulla, San Francisco, Cal., for plaintiff.

Francis R. Kirkham, Richard J. MacLaury, James B. Atkin, Pillsbury, Madison & Sutro, San Francisco, Cal., Daniel H. Case, Pratt, Moore, Bortz & Case, Roy A. Vitousek, Jr., Honolulu, Hawaii, for defendants Standard Oil and Chevron Asphalt.

L. A. Gibbons, Douglas C. Gregg, E. A. McFadden, Los Angeles, Cal., Moses Lasky, Malcolm T. Dungan, Brobeck, Phleger & Harrison, San Francisco, Cal., Frank D. Padgett, Honolulu, Hawaii, for defendants Union Oil.

Gilbert E. Cox, William M. Swope, Smith, Wild, Beebe & Cades, Honolulu, Hawaii, S. R. Vandivort, New York City, William Simon, Richard T. Colman, Howrey, Simon, Baker & Murchison, Washington, D. C., for defendant Shell Oil.

## DECISION ON PLAINTIFF'S PARENS PATRIAE COUNT

PENCE, Chief Judge.

The State of Hawaii brought this antitrust action against three oil companies and a subsidiary of one, alleging in Count I of its Fourth Amended Complaint, basically, that the defendants violated Sherman 1 and 2 by bid rigging, price fixing, market monopolization, and other acts in restraint of trade, and asks for damages based upon the illegal excess prices paid for defendants' products by the State in its proprietary capacity, as a buyer of petroleum products.

In Count II the State "brings this action by virtue of its duty to protect the general welfare of the State and its citizens, acting herein as *parens patriae*, trustee, guardian and representative of its citizens, to recover damages for, and secure injunctive relief against, the violations of the antitrust laws hereinbefore alleged."[1] Plaintiff continues to allege that the combination and conspiracy of the defendants in restraint of trade and to monopolize the sale, marketing and distribution of refined petroleum products has "injured and adversely affected the economy and prosperity of the State of Hawaii" by:

"(a) revenues of its citizens have been wrongfully extracted from the State of Hawaii;

"(b) taxes affecting the citizens and commercial entities have been increased to affect such losses of revenues and income;

"(c) opportunity in manufacturing, shipping and commerce have been restricted and curtailed;

"(d) the full and complete utilization of the natural wealth of the State has been prevented;

"(e) the high cost of manufacture in Hawaii has precluded goods made

1. Fourth Amended Complaint, Paragraph 19.

there from equal competitive access with those of other States to the national market;

"(f) measures taken by the State to promote the general progress and welfare of its people have been frustrated;

"(g) the Hawaii economy has been held in a state of arrested development." [2]

Plaintiff then alleges it "has not yet ascertained the precise extent of said damage to itself and its citizens;" but asked leave to insert such sum when ascertained.[3]

Defendants moved to dismiss Count II—maintaining (a) "there can never be a *parens patriae* suit for damages; such a suit lies only in equity, and only for preventive relief;" (b) "Count II does not in fact allege any injury to the general economy of the State of Hawaii, or to Hawaii in its sovereign or quasi-sovereign capacity, that would support a *parens patriae* injunction;" (c) a *parens patriae* suit for damages is not maintainable under Section 4 of the Clayton Act which permits damages only to business and property, arguing that damages to a state's business or property are by definition and nature not damages to its sovereignty or quasi-sovereignty; (d) if dollar damages to the economy of the State were measured by the harm done to the individual inhabitants, there would be created the risk of double recovery, inasmuch as each of the State's inhabitants, in theory at least, would be entitled to sue for any direct damage to his own business or property; and (e) a *parens patriae*

suit for damages under the antitrust laws will not lie because an injury to the state's sovereignty is by its very nature too remote or speculative to be measurable in money damages.

The problem has been twice fully briefed and argued by all parties.[4]

The concept of a *parens patriae* count in an antitrust action of the nature of the present one, emanates from Georgia v. Pennsylvania R. Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945), where the Supreme Court granted the State of Georgia's motion to file an amended complaint which alleged and sought relief from an antitrust violation by twenty railroad companies. The amended complaint asserted four counts of injury, the Third and Fourth of which sought treble damages for the alleged discriminatory freight rates charged the State and its citizens.[5] The Supreme Court held that Georgia had properly asserted a cause of action for injunctive and *damage* relief as *parens patriae* as well as proprietor, and permitted the complaint involving the Court's original jurisdiction to be filed. The Court stated:

"Georgia, suing for her own injuries, is a 'person' within the meaning of § 16 of the Clayton Act, 15 U.S.C.A. § 16; she is authorized to maintain suits to restrain violations of the antitrust laws or to recover damages by reason thereof. * * * But Georgia is not confined to suits designed to protect only her proprietary interests. The rights which Georgia asserts, *parens patriae*, are those arising from an alleged conspiracy [which] * * *

---

2. Fourth Amended Complaint, Paragraph 20.

3. Plaintiff's Count III pled a class action. Defendants' motion to dismiss this count was granted in an oral bench decision, after briefing and argument.

4. In plaintiff's Third Amended Complaint, the allegations of Count II flirted with the theory of a *parens patriae* claim, and on defendants' motion to dismiss, it was briefed by both plaintiff and defendants as

if it had been properly alleged. This court in a prior Memorandum Decision found that a *parens patriae* claim had not been pleaded and dismissed the count with leave to amend. Thus, all parties were given two shots at the same target.

5. In its supporting brief (page 8) the State of Georgia indicated that it was "not primarily interested in seeking damages for past injuries to the State and her citizens, * * * [but in] the future welfare of the State and her people."

injured the economy of Georgia. * * [W]hen it came to other *sanctions* Congress * * * authorized civil suits not only by the United States but by other persons as well. And we find no indication that, when Congress fashioned those civil *remedies,* it restricted the States to suits to protect their proprietary interests. Suits by a State, *parens patriae,* have long been recognized. *There is no apparent reason why those suits should be excluded from the purview of the anti-trust acts."* 324 U.S. at 447, 65 S.Ct., at 721. (Emphasis added.)

"Since the claim which Georgia asserts as *parens patriae* as well as proprietor meets the standards of justiciability and since Georgia is a 'person' entitled to enforce the civil *sanctions* of the anti-trust laws, the reasons which have been advanced for denying Georgia the opportunity to present her cause of action to this Court fail." 324 U.S. at 452, 65 S.Ct., at 723. (Emphasis added.)

After allowing the State of Georgia to file its complaint seeking both equitable and legal relief and stating that all civil antitrust sanctions are available to the State *in both its proprietary and parens patriae capacities,* the Court ruled that damages based on the allegedly excessive *freight rates would not* be permissible, solely because they had been approved by the ICC and were therefore "legal" rates.[6] This is the only case which either counsel or the court has uncovered which lends precedential support to the claim that a state may recover money damages, trebled, in an antitrust action under the aegis of a *parens patriae* claim.

There are many cases, however, which have passed upon the primary problem of whether a state has sufficient interest in a controversy to be entitled to sue as *parens patriae.* In the determination of the state's standing to sue, each case poses a question of law which can be determined only by an analysis of the particular facts concerned. Generally it has been the Supreme Court which has determined whether a state has properly stated a claim as *parens patriae.* This is because of the Court's original jurisdiction over controversies between states or between a state and citizens of another state. In passing upon the appropriateness of a *parens patriae* claim, the Supreme Court acted in its capacity as a finder of fact, thus performing a function usually undertaken by a lower tribunal. In Georgia v. Tennessee Copper Co., 206 U.S. 230, 238, 27 S.Ct. 618, 620, 51 L.Ed. 1038 (1907), the Supreme Court permitted the State of Georgia to sue to enjoin fumes from a copper plant across the state border from injuring land in five (5) Georgia counties, very little of which was owned by the State, stating:

"* * * [W]e are satisfied, by a *preponderance of evidence,* that the sulphurous fumes cause and threaten damage on so considerable a scale to the forests and vegetable life, if not to health, within the plaintiff state as to make out a case [parens patriae] * * *." (Emphasis added.)

Based on its view of the facts, the Supreme Court has entertained suits *parens patriae* to (a) restrain diversion of water from an interstate stream, Kansas v. Colorado, 206 U.S. 46, 95–96, 27 S.Ct. 655, 51 L.Ed. 956 (1907); (b) enjoin changes in drainage which increase the flow of water in an interstate stream, North Dakota v. Minnesota, 263 U.S. 365, 374, 44 S.Ct. 138, 68 L.Ed. 342 (1923); (c) preclude restraints on the commercial flow of natural gas, Pennsylvania v. West Virginia, 262 U.S. 553, 43 U.S. 658, 67 L.Ed. 1117 (1923); and (d) restrain the discharge of sewage into the Mississippi

6. See Keogh v. Chicago & N. W. R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922) and Marnell v. United Parcel Service, 260 F.Supp. 391, 406 (N.D.Cal. 1966).

River and New York Bay, Missouri v. Illinois and Sanitary District of Chicago, 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497 (1901) and New York v. New Jersey, 256 U.S. 296, 41 S.Ct. 492, 65 L.Ed. 937 (1921). See also Pennsylvania v. West Virginia, *supra* at 592, 43 S.Ct., at 663, where the Supreme Court, after finding a sufficient basis for a suit *parens patriae*, distinguished certain prior opinions on the ground that *"the facts on which they turned*, as the opinions show, were so widely different from those here that they are not in point."* (Emphasis added.)

Conversely, the Supreme Court has rejected the propriety of suits *parens patriae* to (a) enforce claims of a bank's creditors and depositors, Oklahoma v. Cook, 304 U.S. 387, 58 S.Ct. 954, 82 L.Ed. 1416 (1938); (b) collect claims against another state, which claims, prior to assignment, belonged to citizens of the prosecuting state, New Hampshire v. Louisiana, 108 U.S. 76, 2 S.Ct. 176, 27 L.Ed. 656 (1883); (c) recover for injury allegedly resulting from unlawful freight rates charged its citizen-shippers, Oklahoma v. A.T. & Santa Fe RR., 220 U.S. 277, 31 S.Ct. 434, 55 L.Ed. 465 (1911); and (d) enjoin alleged interference with interstate commerce resulting from state quarantine regulations, Louisiana v. Texas, 176 U.S. 1, 20 S.Ct. 251, 44 L.Ed. 347 (1900).

■ An analysis of the above cases indicates that if a state is to maintain an action in its *parens patriae* capacity, *initially* the facts must show that the state has an interest "independent of and behind the titles of its citizens," Georgia v. Tennessee Copper Co., *supra*; "has an interest apart from that of the individuals affected," Pennsylvania v. West Virginia, *supra*; "must show a direct interest of its own and not merely seek recovery for the benefit of individuals who are the real parties in interest," Oklahoma v. Cook, *supra*; "[it] must appear that the controversy to be determined is * * * not a controversy in the vindication of grievances of particular individuals,"

Louisiana v. Texas, *supra*. Thus the state's *parens patriae* claim cannot be a disguised attempt to recover damages on behalf of the state's individual citizen-claimants. It is not a substitute for a class action under Rule 23, Fed.R. Civ.P. The two *theories for recovery* of damages are separate and distinct. (At this stage, we do not concern ourselves with the nature of proof.) So, here, the State in the guise of *parens patriae* cannot recover for the individual and several possible damage claims of its many citizen-consumers of petroleum products. As the preceding cases unmistakably set forth, and as the dissent in Georgia v. Pennsylvania R. Co., *supra*, points out:

"[T]he inhabitants of the State who have suffered injury or who are threatened with injury by the unlawful practices alleged * * * are alone entitled to seek a legal remedy for their injury, and are the proper parties plaintiff in any suit to enforce their rights which are alleged to have been infringed. It has long been settled by the decisions of this Court that a State is without standing to maintain suit for injuries sustained by its citizens and inhabitants for which they may sue in their own behalf." 324 U.S. at 473, 65 S.Ct., at 733.

■ The cases also make manifest a *second prerequisite* which must be met before a state may sue in *parens patriae*, viz., the state has standing to sue in that capacity only if a substantial portion of the inhabitants of the state are adversely affected by the challenged acts of the defendants. For example:

" * * * [T]he interests of the single industry here involved must be held to be private interests, not interests *affecting the whole economy* or *all the people of the state*. This type of interest is insufficient to give Minnesota the right to sue as parens patriae in behalf of all, or a *substantial number*, of her citizens." Land O'Lakes Creameries v. Louisiana, 160

F.Supp. 387, 389. (Emphasis added.) [7]

" * * * [T]he mere fact that a state had no pecuniary interest in the controversy would not defeat the original jurisdiction of this court, which might be invoked by the state as *parens patriae*, trustee, *guardian* or representative of *all or a considerable portion of its citizens* * * *." Kansas v. Colorado, *supra*, at 99, 27 S.Ct., at 668. (Emphasis added.) [8]

■ Thus, if a "substantial number", "or a considerable portion of [Hawaii] citizens" are adversely affected by the alleged acts of the defendants, Hawaii would have the requisite standing to sue as *parens patriae* on behalf of the totality of those citizens. While a state may not sue, *parens patriae*, for the recovery of possible individual damages or claims of its inhabitants, nevertheless if defendants' acts have a deleterious impact upon the general welfare or economy of the state, a state has standing to sue for both financial and injunctive relief in a *parens patriae* capacity.

■ As was conceded by counsel and as this court would judicially notice, there are almost 300,000 motor vehicles operating in this state with approximately 800,000 inhabitants. If more facts were needed, in this State where the grass never ceases to grow, gasoline-powered lawn mowers are as thick as the proverbial fleas on a dog. These two categories, of course, do not cover all of the engines in Hawaii that are powered by petroleum products. The court would judicially notice that there is probably not a single industry nor more than an insignificant number of persons in Hawaii whose operations, life and livelihood are not connected in some way with, or affected by, the use of gasoline fuel and the other petroleum products referred to in the present complaint, and perforce therefore, the cost thereof.

Hawaii meets each of the two primary requirements for a valid *parens patriae* cause of action and may maintain this suit as *parens patriae*, acting on behalf of her citizens.[9]

■ There is no merit in defendants' claim that there can never be a *parens patriae* suit for damages; that such a suit lies only in equity and only for preventive relief. Georgia v. Pennsylvania R. Co., *supra*, *unequivocally* determines that Georgia was [and ergo Hawaii is] "a 'person' entitled to enforce the civil sanctions of the anti-trust laws." (324 U.S. at 452, 65 S.Ct., at 723) The civil sanctions of the antitrust laws certainly include recovery of damages from violators thereof. As indicated earlier, the Court in denying Georgia the right to recover damages from the railroad, did so only because of the prior ruling of the Court in Keogh v. Chicago N. W. R. Co., *supra*, note 6. *Keogh* was also a suit for damages under Section 7 of the Sherman Act, 26 Stat. 210, wherein the Court determined that even though a rate-making conspiracy may have existed between the defendant railroads, nevertheless, for the purpose of a suit for damages, a rate, fixed by the Commission, until suspended or set aside, was for all purposes the legal rate as between shipper and carrier, and denied Keogh's antitrust action. Absent the impact of the *Keogh* decision, the only rational inference to be drawn from Georgia v. Pennsylvania R. Co., is that an antitrust suit for treble damages was properly pled by Georgia in its *parens patriae* capacity. Certainly the broad objectives of the antitrust statutes are not to be meanly or narrowly curtailed because it is a state that brings a damage claim thereunder, in a *parens patriae* capacity.

7. See also Jones, Governor ex rel. Louisiana v. Bowles, 322 U.S. 707, 64 S.Ct. 1043, 88 L.Ed. 1551 (1944).

8. See also Kansas v. Colorado, 185 U.S. 125, 142, 22 S.Ct. 552, 46 L.Ed. 838 (1902) and Missouri v. Illinois & Sanitary District of Chicago, *supra*, at 241, 21 S.Ct. 331.

9. Georgia v. Tennessee Copper Co., *supra*; Missouri v. Illinois, *supra*; Pennsylvania v. West Virginia, *supra*.

Although defendants urge that Count II "does not in fact allege any injury to the general economy of the State of Hawaii", this conclusatory argument is nullified by subparagraphs (c), (d), (e), (f) and (g) of paragraph 20 of plaintiff's complaint.[10] (See page 2, supra.)

▉ Defendants additionally argue that any possible recovery by the State under a *parens patriae* theory must be apart from any recovery for an injury to the business or property of the State in its proprietary capacity. Defendants continue that the antitrust statutes allow damages to be recovered only for injury to "business or property." 15 U.S.C. § 15. Their position is that an injury to the economy of the State cannot be an injury to the State's "business or property." [11]

Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906), long ago said that a public body is injured in its "property" when it is forced to pay more for a commodity than it would absent a conspiracy. If the economy of a state can be injured, then that economy is finite and can fall within a definition of the word "property", even though it does not fall within the normal, simple definition of "business and property" under Section 4 of the Clayton Act. As indicated above, Georgia v. Pennsylvania R. Co. lays at rest defendants' semantic argument. It clearly there differentiated between suits for damages in the State's proprietary capacity

and suits for damages in its quasi-sovereign capacity and held that damages to the State's economy, if proved, were recoverable as a distinct injury, severable from whatever injury it might suffer in its proprietary capacity.[12]

There can be no risk of double recovery from the plaintiff for any single damage. As previously stated, a *parens patriae* action cannot be brought to recover the individual damages of the State's inhabitants. If the State cannot prove injury to the State's economy —an injury completely severable from the injuries to its individual inhabitants, then of course it could recover no money damages. On this point, as well as in defendants' claim that an injury to the State's economy is of a nature too remote or speculative to be measurable in money damages (and cannot in any event be damages to a "state's business and property"), defendants move out of the area of pleading into the area of proof at trial. This case is at the pleading stage. Hawaii has pled a *parens patriae* cause of action that cannot be summarily dismissed. How it will prove its damage, what type of evidence will be offered, how the quantum of alleged damage is to be measured, are problems to be met *in futuro*, problems that will be dealt with at the proper time in the light of *Southern Photo Materials, Storey Parchment Co., Bigelow,* and *Continental Ore.*[13]

Defendants' motion to dismiss Count II is denied.

10. Allegation (a) is most ambiguous and allegation (b) becomes intelligible only if the word "affect" is construed to mean "offset". See plaintiff's Count II, *supra.*

11. Defendants cite Highland Supply Corp. v. Reynolds Metals Co., 327 F.2d 725, 732 (8 Cir. 1964), as authority for the statement that the damage or injuries must be something different from that sustained by the community or general public. The words are convenient for defendants' argument, but the facts of that case have no application to the *parens patriae* problem before the court.

12. "But Georgia is not confined to suits designed to protect only her proprietary

interests," and continued, " * * * we find no indication that, when Congress fashioned those civil [antitrust] *remedies*, it restricted the States to suits to protect their proprietary interests." 324 U.S. at 447, 65 S.Ct., at 721. (Emphasis added.)

13. Eastman Kodak v. Southern Photo Materials, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); Story Parchment Co. v. Patterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Bigelow v. RKO Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946); Continental Ore v. Union Carbide & Carbon Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962).