**STATE OF HAWAII, Plaintiff-Appellee,**

v.

**STANDARD OIL COMPANY OF CALIFORNIA, Union Oil Company of California, Shell Oil Company and Chevron Asphalt Company, Defendants-Appellants.**

No. 24603.

United States Court of Appeals, Ninth Circuit.

Sept. 25, 1970.

Francis R. Kirkham (argued), Richard J. MacLaury, James F. Kirkham, Richard W. Odgers, of Pillsbury, Madison & Sutro, San Francisco, Cal., for Standard Oil Co. of Cal. and Chevron Asphalt Co.

Moses Lasky (argued), and Malcolm T. Dungan, of Brobeck, Phleger & Harrison, San Francisco, Cal., Douglas C. Gregg and E. A. McFadden, Los Angeles, Cal., for Union Oil Co. of Cal.

William Simon & Richard T. Colman, of Howrey, Simon, Baker & Murchison, Washington, D. C., for Shell Oil Co.

Maxwell M. Blecher (argued), Francis O. Scarpulla, Peter Donnici, of Law Offices of Joseph L. Alioto, San Francis-

co, Cal., Bertram Kanbara, Atty. Gen., State of Hawaii, George Pai and Joseph S. Kinoshita, Deputy Attys. Gen., Honolulu, Hawaii, for respondent.

Thomas C. Lynch, Atty. Gen., Wallace Howland, Asst. Atty. Gen., Robert E. Murphy, Michael I. Spiegel, Carole A. Kornblum, James R. McCall, Deputy Attys. Gen., Sacramento, Cal., amicus curiae, State of California.

Before MERRILL, WRIGHT and TRASK, Circuit Judges.

MERRILL, Circuit Judge.

This appeal presents the question whether a state can, under § 4 of the Clayton Act, 15 U.S.C. § 15,[1] maintain a suit for treble damages as *parens patriae* for injury done to the general economy of the state. We hold it cannot.

The amended complaint filed by the State of Hawaii alleges that appellants conspired to fix and maintain unreasonably high prices for motor gasoline and asphalt in Hawaii. Count I alleges losses suffered by the state in its proprietary capacity. Count II, with which we are concerned, alleges:

"The State of Hawaii * * * brings this action by virtue of its duty to protect the general welfare of the State and its citizens, acting herein as *parens patriae,* trustee, guardian and representative of its citizens, to recover damages for, and secure injunctive relief against, the violations of the antitrust laws hereinbefore alleged."

The complaint then continues:

"The unlawful contracts * * * have injured and adversely affected the economy and prosperity of the State of Hawaii in, among others, the following ways:

* * * * * *

Then are listed the seven specifications of injury set forth in the margin.[2]

The prayer is for injunction and for treble damages under § 4 of the Clayton Act. Respecting damages under Count II, the complaint alleges:

"Plaintiff has not yet ascertained the precise extent of said damage to itself and its citizens; however, when such amount has been ascertained, plaintiff will ask leave of court to insert said sum herein."

Appellants moved to dismiss Count II on the ground that it failed to state a claim. The motion was denied.[3] The opinion of the court in support of its order appears at 301 F.Supp. 982 (D.C. Hawaii 1969). This appeal is taken

---

1. "§ 15. *Suits by persons injured; amount of recovery*

 Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

2. "(a) revenues of its citizens have been wrongfully extracted from [the economy of] the State of Hawaii;
 (b) taxes affecting the citizens and commercial entities have been increased to [offset] such losses of revenues and income;
 (c) opportunity in manufacturing, shipping and commerce have been restricted and curtailed;

 (d) the full and complete utilization of the natural wealth of the State has been prevented;
 (e) the high cost of manufacture in Hawaii has precluded goods made there from equal competitive access with those of other States to the national market;
 (f) measures taken by the State to promote the general progress and welfare of its people have been frustrated;
 (g) the Hawaii economy has been held in a state of arrested development."

 (The bracketed language is included in response to Hawaii's assertion that it serves to correct typographical error in the complaint as filed.)

3. The complaint, in a third count, attempted to state a class action claim under Rule 23, Fed.R.Civ.P., on behalf of the state and all citizens who have purchased products from appellants. This count was dismissed by the court and no appeal has been taken from that order.

from the court's order pursuant to 28 U.S.C. § 1292(b).

Appellants attack Count II on many grounds. They contend that *parens patriae* suits will not lie to recover money damages. They contend that injury to the general economy of a state is not susceptible of computation or of proof, and that allegations of such injury should not be recognized as presenting a justiciable case or controversy. The basis of our disposition of the case makes it unnecessary to reach these issues. We hold only that damages for injury done to the general economy of a state are not recoverable by the state under § 4 of the Clayton Act.

Hawaii relies (as did the District Court) on Georgia v. Pennsylvania Railroad Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945). Georgia, invoking the original jurisdiction of the Supreme Court (Art. III, § 2 of the Constitution), there sought leave to file a complaint against twenty railroad companies charging a conspiracy to fix arbitrary and noncompetitive freight rates to and from Georgia so as to prefer the ports of other states over those of Georgia. The nature of the injury allegedly suffered by Georgia is similar to that here alleged by Hawaii (see footnote 2).

Leave was granted. The Court stated:

"Georgia as a representative of the public is complaining of a wrong which, if proven, limits the opportunities of her people, shackles her industries, retards her development, and relegates her to an inferior economic position among her sister States. These are matters of grave public concern in which Georgia has an interest apart from that of particular individuals who may be affected." 324 U.S. at 451, 65 S.Ct. at 723.

And:

"But Georgia is not confined to suits designed to protect only her proprietary interests. The rights which Georgia asserts, *parens patriae*, are those arising from an alleged conspiracy of private persons whose price-fixing scheme, it is said, has injured the economy of Georgia. * * * Suits by a State, *parens patriae*, have long been recognized. There is no apparent reason why those suits should be excluded from the purview of the anti-trust acts." 324 U.S. at 447, 65 S. Ct. at 721.

As the Court made clear, however, it was concerned with the relief offered by § 16 of the Clayton Act.

"Sec. 16 of the Clayton Act provides for relief by injunction 'when and under the same conditions and principles as injunctive relief against the threatened conduct that will cause loss or damage is granted by courts of equity.' Those requirements are sufficiently satisfied to justify a filing of this bill. It must be remembered that this is a suit to dissolve an illegal combination or to confine it to the legitimate area of collaboration." 324 U.S. at 460, 65 S.Ct. at 727.

And:

"Dissolution of illegal combinations or a restriction of their conduct to lawful channels is a conventional form of relief accorded to anti-trust suits. No more is envisaged here." 324 U.S. at 462,[4] 65 S.Ct. at 728.

Section 16, 15 U.S.C. § 26,[5] is far broader than § 4. Any person may secure injunctive relief against threatened

---

4. Thus the Court in *Georgia* did not specifically rule on the question whether damages are recoverable in *parens patriae* suits. As we have noted, we do not reach that question here.

5. Section 16 provides in part:
 "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the anti-trust laws * * * when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings * *."

loss or damage by violation of the antitrust laws. Section 4 provides for recovery of treble damages only by a person injured in his business or property by such a violation.

Hawaii's claim does not constitute an effort to prevent unjust enrichment by the wrongdoers through recovery by the state, for the affected consumers or for itself, of the total of direct injuries suffered by persons who are unable to seek recovery for themselves.[6] Hawaii's claim is over and above all such recovery by persons, or on behalf of classes, and is asserted to have independent existence quite apart from such direct injuries. In light of Hawaii's inability yet to articulate a more precise theory or measure of such damages, we are skeptical of the existence of an independent harm to the general economy. The general economy is an abstraction. It has no value in itself, save as it may (in a representational capacity on behalf of business and property generally) serve to confer value on the specific items of business or property it affects. It exists only as a reflection of the business or property values it represents.

■ Nevertheless, assuming *arguendo* that the general economy can suffer injury from antitrust violations independent of the injuries suffered by private persons or by the state in its proprietary role, we hold upon two closely related grounds that Hawaii's claim for money damages does not fall within § 4.

■ 1. An injury to the general economy of the state is not an injury to the business or property of the state or its people. A state can, in its proprietary capacity, engage in business. For injury suffered in these respects a state can recover under § 4. Georgia v. Evans, 316 U.S. 159, 62 S.Ct. 972, 86 L.Ed. 1346 (1942). Such was the basis for Hawaii's Count I. But the terms "business or property" are to be construed in their ordinary sense; they do not encompass all pecuniary injury, let alone all manner of damage felt by a community. *E.g.*, Martin v. Phillips Petroleum Co., 365 F.2d 629 (5th Cir.), cert. denied, 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d 451 (1966); Duff v. Kansas City Star Co., 299 F.2d 320 (8th Cir. 1962); Roseland v. Phister Mfg. Co., 125 F.2d 417 (7th Cir. 1942). Unless the concepts of business or property are expanded well beyond traditional usage, the general economy of a region cannot be regarded as property in possession of the residents individually or publicly.

■ 2. Accepting that the general economy can suffer injury from antitrust violations, such injury is indirect and consequential to a degree and in a sense far beyond that usually discussed in this connection. It has long been established that one whose injury is an incidental or remote consequence of defendant's violation may not recover under the Clayton Act. Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358, 363 (9th Cir. 1955). Accordingly, it has been held that shareholders, Bookout v. Schine Chain Theatres, Inc., 253 F.2d 292 (2d Cir. 1958); lessors, Melrose Realty Co. v. Loew's Inc., 234 F.2d 518 (3d Cir.), cert. denied, 352 U.S. 890, 77 S.Ct. 128, 1 L.Ed.2d 85 (1956); creditors, Loeb v. Eastman Kodak Co., 183 F. 704 (3 Cir. 1910); patent owners, suing for loss of royalties, Productive Inventions, Inc. v. Trico Prods. Corp., 224 F. 2d 678 (2 Cir. 1955); and others of like remoteness lack standing to obtain damages under the antitrust laws.

The attenuated injuries alleged by Hawaii fall far outside the area of directness contemplated by the Clayton Act. Compensation of the public (let alone treble damages) for injury of such an extraordinary character presents policy questions which, in our view, should be subjected to close Congressional inquiry

---

6. As noted (footnote 3, *supra*), Hawaii's class action was dismissed and is not before us.

and study. We do not believe that § 4 as it now stands can be construed to make such recovery available.

Reversed and remanded with instructions that Count II of Hawaii's amended complaint be dismissed.