**The STATE OF CALIFORNIA, on behalf of itself and all others similarly situated, and as parens patriae, Plaintiff,**

v.

**FRITO-LAY, INC., et al., Defendants.**

**No. 71-485-R.**

United States District Court, C. D. California.

Oct. 13, 1971.

As Amended Nov. 8, 1971.

Evelle J. Younger, Atty. Gen., Herbert Davis, Deputy Atty. Gen., State of California, Los Angeles, Cal., for plaintiff.

William I. Cohen, Palo Alto, Cal., James F. Matthews, Mager, Matthews & Neider, San Jose, Cal., Julian O. von Kalinowski Gibson, Dunn & Crutcher, Reed A. Stout, Lawler, Felix & Hall, Laughlin E. Waters, Richard R. Mainland, Nossaman, Waters, Scott, Krueger & Riordan, Los Angeles, Cal., William Orrick, Jr., Charles Hobson, III, Orrick, Herrington, Rowley & Sutcliffe, William E. Mussman, Terrence A. Callan, Pillsbury, Madison & Sutro, San Francisco, Cal., Thomas R. Sheridan, Edward M. Medvene, Richard C. Leonard, Patrick D. Horgan, Simon, Sheridan, Murphy, Thornton & Medvene, Los Angeles, Cal., for defendants.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND CAUSE OF ACTION

REAL, District Judge.

Defendants move to dismiss the second cause of action of plaintiff's Third Amended Complaint For Treble Damages Under The Antitrust Laws.

Plaintiff has filed a Third Amended Complaint For Treble Damages Under The Antitrust Laws alleging a class ac-

tion as a representative of "all counties, cities and school districts in the State of California." This class action has previously been determined to be proper and raises no issue here except as necessary to clarify the status as *"parens patriae"* claimed by plaintiff in its second cause of action.

Plaintiff sues, in its second cause of action, "as sovereign, agent and protector of all its citizens, * * * *parens patriae* as representative of its citizens who are natural persons and who have not sued in their own right."

Defendants move to dismiss this second cause of action pursuant to Rule 12 (b) (6) and Rule 12(f) of the Federal Rules of Civil Procedure [1] for failure to state a claim and immaterial allegations of *parens patriae*, contending that plaintiff has no interest as *parens patriae* for which damages are cognizable under Section 4 of the Clayton Act (15 U.S.C. § 15).[2]

*Parens patriae* [3] has traditionally applied to that function of sovereignty in the protection of persons non sui juris, i. e., those citizens or subjects unable to protect themselves.[4] Its development in American jurisprudence has been largely relegated to suits brought by States in the United States Supreme Court invoking the exercise of its original jurisdiction under art. 3, § 2 of the United States Constitution.

In Georgia v. Tennessee Copper Co., (1906) 206 U.S. 230, 27 S.Ct. 618, 51 L.Ed. 1038, 11 Ann.Cas. 488, the Supreme Court entertained a suit to enjoin the discharge of noxious gases discharged by the production facilities of the Tennessee Copper Co. over the territory of the State of Georgia. Georgia alleged a wholesale destruction of forests, orchards and crops—and other injuries done and threatened in five counties of the State.

In laying aside arguments of damages recoverable by individual citizens and lack of state interest, Chief Justice Holmes says for the Court at page 237, 27 S.Ct. at page 619:

"* * * [T]his is a suit by a state for an injury to it in its capacity of *quasi-sovereign*. In that capacity the state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain. It has the last word as to whether its mountains shall be stripped of their forests and its inhabitants shall breathe pure air. It might have to pay individuals before it can utter that word, but it remains the final power. The alleged damage to the state as a private owner is merely a makeweight, and we may lay on one side the dispute as to whether the destruction of forests has led to the gullying of its roads."

1. Federal Rules of Civil Procedure, Rule 12 provides in its pertinent part:
   "* * *
   (b) * * * the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted, * * *
   (f) * * * Upon motion * * * the court may order stricken from any pleading any * * * immaterial * * * matter."

2. Title 15, United States Code, Sec. 15, provides in its pertinent part:
   "§ 15. Suits by persons injured; amount of recovery.
   Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * *, and

shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

3. *Parens patriae* * * * the father of the country constituted in law by the state (as in the U. S.) or by the sovereign (as in Great Britain) in the capacity of legal guardian of persons not sui juris and without natural guardians, of heir to persons without natural heirs and as protector of all citizens or subjects unable to protect themselves. Webster's Third New International Dictionary Unabridged (1967).

4. Attorney General v. Dublin (Mayor of), 1 Bligh U.S. 312 (1827), 4 Eng.Rep. 888 (1901), Shaftsbury (Earl of) v. Shaftsbury, Gilb, Rep. 172 (1725), 25 Eng.Rep. 121 (1903).

The considerations of Chief Justice Holmes in Georgia v. Tennessee Copper Co., *supra,* find their justification in Missouri v. Illinois and Sanitary District of Chicago (1900), 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497, where the court appears to be speaking of adequacy of remedy in the vindication of private rights as authority for intervention by a state in its sovereign capacity. At page 241, 21 S.Ct. at page 344 the court explains the rationale in this language:

" * * * [T]he health and comfort of the large communities inhabiting those parts of the State situated on the Mississippi River are not alone concerned, but contagious and typhoidal diseases introduced in the river communities may spread themselves throughout the territory of the State. Moreover, substantial impairment of the health and prosperity of the towns and cities of the State situated on the Mississippi River, *including its commercial metropolis, would injuriously affect the entire State.*

That suits brought by individuals, each for personal injuries threatened or received, would be wholly inadequate and disproportionate remedies, requires no argument." (Emphasis ours.)

Faced again with a suit by New York to enjoin the pollution of New York harbor by New Jersey, the Supreme Court in New York v. New Jersey, (1920) 256 U.S. 296, at page 301, 41 S.Ct. 492, at page 494, 65 L.Ed. 937, disposed of jurisdictional arguments:

" * * * [T]he health, comfort and prosperity of the people of the state and the value of their property being gravely menaced, as it is averred that they are by the proposed action of the defendants, the state is the proper party to represent and defend such rights by resort to the remedy of an original suit in this court under the provisions of the Constitution of the United States."

Recognition has been given to a state's parens patriae status in claims for diversion of waters. See Kansas v. Colorado (1902), 185 U.S. 125, 22 S.Ct. 552, 46 L.Ed. 838; Connecticut v. Massachusetts (1931), 282 U.S. 660, 51 S.Ct. 286, 75 L.Ed. 620; Wisconsin v. Illinois (1929), 278 U.S. 367, 49 S.Ct. 163, 73 L.Ed. 426.[5]

Conceding the viability of *parens patriae* in the protection of individuals *non sui juris* and in the protection of natural resources by injunctive relief, the defendants argue that such actions do not authorize the bringing of the present suit for treble damages under the antitrust laws for lack of an interest in the State "independent of and behind the titles of its citizens."

That a State can sue *parens patriae* under the antitrust laws seems clear since the decision of Georgia v. Pennsylvania Railroad Company et al. (1945), 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051. Georgia, invoking the original jurisdiction of the Supreme Court sued several railroads alleging a price fixing conspiracy. The suit was brought by Georgia—1. In her capacity as a quasi-sovereign or as agent and protector of her people against a continuing wrong done to them, and 2. In her capacity as a proprietor to redress wrongs suffered by the State as the owner of a railroad and as owner and operator of various institutions of the State.

Upholding Georgia's right to sue the Court says at page 447, 65 S.Ct. at page 721:

" * * * [H]ere Georgia asserts rights based on the anti-trust laws. The fact that the United States may bring criminal prosecutions or suits for injunctions under those laws does not mean that Georgia may not maintain the present suit * * * Georgia

---

5. See also: Arizona v. California, (1936) 298 U.S. 558, 56 S.Ct. 848, 80 L.Ed. 1331; North Dakota v. Minnesota (1923) 263 U.S. 365, 68 L.Ed. 342, 44 S.Ct. 138; Pennsylvania v. West Virginia, 262 U.S. 553, 592, 43 S.Ct. 658, 67 L.Ed. 1117, 1130, 32 A.L.R. 300 (Interruption of flow of natural gas).

sues as a proprietor to redress wrongs suffered by it * * * But Georgia is not confined to suits designed to protect only her proprietary interests. The rights which Georgia asserts parens patriae are those arising from an alleged conspiracy of private persons whose price-fixing scheme, it is said, has injured the economy of Georgia. * * * [W]e find no indication that, when Congress fashioned those civil remedies, it restricted the States to suits to protect their proprietary interests. Suits by a State, parens patriae, have long been recognized. There is no apparent reason why those suits should be excluded from the purview of the anti-trust acts."

Laying Georgia v. Pennsylvania Railroad Company et al., supra, aside momentarily, defendants urge upon the Court several recent cases which they maintain preclude a state from suing parens patriae to recover damages suffered by their individual citizens.

In Hawaii v. Standard Oil Company of California et al., 301 F.Supp. 982, 988 (D.Hawaii 1969), Judge Pence permitted a parens patriae claim by the State of Hawaii for "damages to the State's economy * * * recoverable as a distinct injury, severable from whatever injury it might suffer in its proprietary capacity."

Although not considering the type of claim presented here by California, Judge Pence completely reviews the evolution of parens patriae and the relationship those cases bear to the questions here presented. But the exact nature of the claims in the Hawaii case, supra, and here are distinguishable. For a great many consumers, as credit card holders, the purchase of gasoline results in a record being made of the transaction. The purchaser and the amount of the purchase is readily ascertainable either from the records of the consumer himself or from credit card records maintained by oil companies. Here, the purchase of snack foods is done largely on a direct cash basis (much with the dimes and quarters of children) where no receipt is kept by the consumer, nor does the producer have any identification of its ultimate customer, largely the "younger set." If the sovereign, by reason of its sovereignty, has the duty to protect citizens unable to protect themselves then the rationale of Georgia v. Pennsylvania Railroad Company et al., supra, is significant to the claim of California as will later become apparent.

This Court considering parens patriae In re Multidistrict Motor Vehicle Air Pollution, M.D.L. 31, 52 F.R.D. 398, 401 said:

"The status of parens patriae cannot be used to substitute for a class action as to individual claims of the residents of political subdivision."

But the facts are vastly different. The claims considered in the Vehicle Air Pollution cases, supra, were grounded in charges of restraint of trade—not price fixing—where impact and damage may be as varied as the number of claimants. Here, assuming arguendo, proof of a price fixing conspiracy, proof of damage can be made in gross applying what has recently been described as the "fluid method of recovery". Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253 (S.D. N.Y.1971).

In Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation et al., 309 F.Supp. 1057 (E. D.Pa.1969), Judge John W. Lord, Jr. considering the authorities presented to him including the Hawaii case, supra, denied parens patriae status to California and Kansas suing "on behalf of individual consumers within these States." Of particular concern to Judge Lord was "to allow a plaintiff State to recover damages for individual claimants in a substitute type of representative suit without the safeguards there provided would undermine the aims of that Rule." [6]

---

6. Rule 23 Federal Rules of Civil Procedure.

That does not appear to be the thrust of California's claims here. California wishes to exercise its *parens patriae* status only as to those of its citizens who, by reason of lack of necessary proof of claim or otherwise, are *unable* to vindicate their rights under the antitrust laws. It is contemplated that this action could stand together with, and not in contravention of, the consumer class action filed in another consolidated case.[7]

In re Coordinated Pretrial in Antibiotic Antitrust Actions, 333 F.Supp. 278 (S.D.N.Y.1971) lends no support to defendants' position for there, Judge Miles Lord, sitting by designation in the Southern District of New York, deemed it "unnecessary to examine the proposed *parens patriae* claims of the states." Interestingly enough Judge Miles Lord finds the adequacy of class representation by a state's attorney general in almost classic *parens patriae* language when he says:

> "Finally, it is difficult to imagine a better representative of the retail consumers within a state than the state's attorney general. Historically the common law powers of the attorney general conclude the right and duty to take actions necessary to the maintenance of the general welfare and his presence in these actions is but a modern day application of that right and duty."

This case also presents a question different than the *parens patriae* claim permitted by Judge Pence in the *Hawaii* case, *supra*, and subsequently reversed by the Court of Appeals in State of Hawaii v. Standard Oil Company of California, 431 F.2d 1282 (9th Cir. 1970). Certiorari has been granted by the United States Supreme Court, 401 U.S. 936, 91 S.Ct. 931, 28 L.Ed.2d 215 (1971) and is still pending.

*Parens patriae* and antitrust violations have presented difficult and thorny problems to the Courts that have considered them. Certainly, one thing is clear—no *parens patriae* claim has yet been allowed in the context of the facts presented here. The declinations have apparently—from the cases reviewed by the Court—been made upon the ground that no authority can be found for permitting such actions. Courts have been wary to enter the uncharted legal morass that appears to await. Yet no one gives meaningful objection to why *parens patriae* is not a proper tool to redress the wrongs of major proportions alleged by plaintiff. Price fixing—of the proportions alleged—if true—violates the public right to be free of non-competitive business practices—practices proscribed by the antitrust laws of the United States. It takes little imagination to recognize that in the violation of such a public right—the State—*parens patriae* has the duty to protect its citizens and provide its public with a free and competitive consumer market. Arguably, it can be said that this is the function of the United States in those remedies available to it for enforcement of the antitrust laws. But what corporation would not risk violation of the antitrust laws where maximum penalties are miniscule compared to the potential harm to a public unable to meet the "technical" requirements of proof of damage? Or, even more to the point—what corporation would risk violation of the antitrust laws if they were assured every penny of conspiratorial gain, three times over, were the ultimate result of a proven price-fixing conspiracy? Putting the question is its own obvious answer. The Supreme Court of the United States has recognized the inadequacy of governmental prosecution or prospective injunctive relief. Perma Life Mufflers, Inc., et al. v. International Parts Corp. et al., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). In another context (*pari delicto*) but equally applicable to the present relief sought by California, Mr.

---

7. Assuming the broad class action for consumers is maintainable. A question not yet decided in this litigation.

Justice Black says at page 139, 88 S.Ct. at page 1984:

" * * * the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws."

"Private" in the sense used by Mr. Justice Black cannot be limited to "individual" claims but can and should be equally applicable to "group" claims even if that group should involve what we have termed here the public right to a free competitive market place.

If this, then, be a public right—then the causes of action which accrue to that group of individuals are property in which the State has an interest "independent of and behind the titles of its citizens" within the rationale of Georgia v. Pennsylvania Railroad Co. et al., *supra*.[8] Courts cannot shrink from the responsibility of providing a forum for litigating claimed violations of rights—private or public—just because it has never been done before. *Parens patriae* in this representative sense meets both the letter and spirit of Section 4 of the Clayton Act. This Court has been presented no valid reason why California, insofar as it purports to represent citizens for whom it is impractical or impossible to bring individual suits to recover damages for violation of the antitrust laws, should not be given the opportunity to do so.

The motion of the defendants to dismiss plaintiff's second cause of action is denied.

The Court is of the opinion that this Order involves controlling questions of law as to which there is substantial ground for difference of opinion, and that pursuant to Title 28, United States Code, Section 1292(b) an immediate appeal may materially advance the ultimate termination of the litigation.

---

8. California Government Code, Sec. 180 et seq.; California Code of Civil Procedure, Sec. 1360 et seq. suggest the procedures for the handling of any recovery had herein.