The **STATE OF CALIFORNIA**, on behalf of itself and all others similarly situated, and as parens patriae, Plaintiff-Appellee,

v.

**FRITO–LAY, INC.**, et al., Defendants-Appellants.

No. 72–1269.

United States Court of Appeals, Ninth Circuit.

Feb. 7, 1973.

Certiorari Denied May 21, 1973.

See 93 S.Ct. 2291.

Francis R. Kirkham (argued), William E. Mussman, Terrence A. Callan, of Pillsbury, Madison & Sutro, San Francisco, Cal., Julian von Kalinowski, Irwin F. Woodland, Don J. Belcher, J. Edd Stepp, Jr., of Gibson, Dunn & Crutcher, Reed Stout, William A. Plourde, of Lawler, Felix & Hall, Laughlin E. Waters, Richard Mainland, of Nossaman, Waters, Scott, Krueger & Riordan, Thomas R. Sheridan, Edward E. Medvene, Patrick Horgan, of Simon, Sheridan, Murphy, Thornton & Medvene, Los Angeles, Cal., William H. Orrick, Jr., William L. Riley, of Orrick, Herrington, Rowley & Sutcliffe, San Francisco, Cal., William I. Cohen, Palo Alto, Cal., James F. Matthews, of Malovos, Mager & Chasuk, San Jose, Cal., for defendants-appellants.

Herbert Davis, Deputy Atty. Gen. (argued), Elwood Lui, Deputy Atty. Gen., Evelle J. Younger, Atty. Gen., Los Angeles, Cal., for plaintiff-appellee.

Before MERRILL and TRASK, Circuit Judges, and FREY, District Judge.*

MERRILL, Circuit Judge:

This interlocutory appeal, allowed under 28 U.S.C. § 1292(b), is taken from an order of the District Court, 333 F. Supp. 977, denying appellants' motion to dismiss the second cause of action stated by California in its complaint to recover treble damages under § 4 of the Clayton Act, 15 U.S.C. § 15.[1] The suit was brought against twelve manufacturers of "snack foods," charging a conspiracy to fix and maintain prices in violation of the Sherman Act, 15 U.S.C. § 1.

The state's second cause of action reads as follows:

"The State of California, as sovereign, agent and protector of all its citizens, sues *parens patriae* as representative of its citizens who are natural persons and who have not sued in their own right. This action is brought for treble the amount of damages suffered by its citizens due to the defendants' violations of the antitrust laws of the United States. It is impractical or impossible for the citizens represented herein to bring individual suits to recover damages and the duty to protect their interests and to enforce the policy of the antitrust laws rests with their sovereign, the State of California."

Thus this appeal presents the question whether a state, as *parens patriae*, may sue and recover treble damages on behalf of its citizen-consumers for the injuries suffered by them.

This is quite a different question from that presented in Hawaii v. Standard Oil Company of California, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). There, Hawaii sought treble-damage recovery for injury to a quasi-sovereign interest of the state itself—in essence, an injury to the general economy of the state. It was held that this was not injury to business or property of the state under § 4 of the Clayton Act. 405 U.S. at 264, 92 S.Ct. 885.

Here, it is for injury to business or property of the state's citizens that recovery is sought. The question presented is the authority of the state to sue in a representative capacity as *parens patriae* to recover for that injury.[2]

Judicial recognition of such authority would be a substantial departure from the scope of *parens patriae* authority as it has been recognized in this country to date. Where it has hitherto been recognized, it has been to halt injury to a quasi-sovereign state interest. Hawaii v. Standard Oil Company of California, *supra*, 405 U.S. at 257–259, 92 S.Ct. 885. This interest has been defined as "an interest apart from that of particular individuals who may be affected." Georgia v. Pennsylvania Railroad, 324 U.S. 439, 451, 65 S.Ct. 716, 722, 89 L.Ed. 1051 (1945).

*Parens patriae* has received no judicial recognition in this country as a basis for recovery of money damages for injuries suffered by individuals.[3] In a series of

---

* Honorable William C. Frey, United States District Judge for the District of Arizona, sitting by designation.

1. Section 4 of the Clayton Act reads:
   "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

2. This proposition has been considered and rejected in at least three District Court opinions: by Judge Pence, in Hawaii v. Standard Oil Company of California, 301 F.Supp. 982, 986 (D.Haw.1969); by Judge Lord, in Philadelphia Housing Authority v. American Radiator and S. Fan. Corp., 309 F.Supp. 1057, 1061 (E.D.Pa. 1969); and by Judge Real, in In re Motor Vehicle Air Pollution Control Equipment, 52 F.R.D. 398 (C.D.Cal. 1970).

3. *But see* Note, Wrongs Without Remedy: The Concept of Parens Patriae Suits for Treble Damages Under the Antitrust

cases the Supreme Court has rejected *parens patriae* as a basis for invoking the court's original jurisdiction where individuals were the real parties in interest.[4]

As authority for extending the concept of *parens patriae* into this area the state relies on the historic "royal prerogative" of a king "as general guardian of all infants, idiots and lunatics."[5] It asserts that the practical inability of an injured citizen to bring an individual suit in his own behalf creates a comparable disability and warrants the establishment of a state prerogative to act for his protection.

■ It is true that in the United States this royal prerogative function of the king has passed to the states.[6] How-

ever, its need has been met by provisions for court-administered guardianships.[7] Efforts to provide for the disability which the state asserts to exist have found expression in provisions for class actions.[8]

■ It would thus appear that the state is seeking to act here not as *parens patriae* in the sense in which that term is recognized in this country, but as guardian *ad litem* for the disabled members of the class it purports to represent.[9]

The state is looking beyond recovery for injuries to its citizens to its own ultimate acquisition of the recoveries obtained.[10] That acquisition, it asserts, will serve a valid public purpose by providing the injured citizens with the clos-

---

Laws, 43 S.Cal.L.Rev. 570, 584–93 (1970) ; Note, Damage Distribution in Class Actions : The Cy Pres Remedy, 39 U.Chi.L.Rev. 448, 453–56 (1972) [hereinafter cited as Damage Distribution].

4. New Hampshire v. Louisiana, 108 U.S. 76, 2 S.Ct. 176, 27 L.Ed. 656 (1883) ; Oklahoma v. Atchison, Topeka and Santa Fe Railway, 220 U.S. 277, 31 S.Ct. 434, 55 L.Ed. 465 (1911) ; Pennsylvania v. West Virginia, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923) ; North Dakota v. Minnesota, 263 U.S. 365, 44 S.Ct. 138, 68 L.Ed. 342 (1923) ; Oklahoma v. Cook, 304 U.S. 387, 58 S.Ct. 954, 82 L.Ed. 1416 (1938). The rationale of these decisions is that "[A]n action brought by one State against another violates the Eleventh Amendment if the plaintiff State is actually suing to recover for injuries to designated individuals." Hawaii v. Standard Oil Company of California, 405 U.S. at 258 n. 12, 92 S.Ct. at 889.

5. Blackstone Commentary 47–48 (12th Ed. E. Christian Ed. 1794).

6. Hawaii v. Standard Oil Company of California, 405 U.S. at 257, 92 S.Ct. 885.

7. See, e. g., Cal.Civil Pro.Code § 372 (West 1954). The same provisions exist in the federal courts. Fed.R.Civ.P. 17(c).

8. "Rule 23 of the Federal Rules of Civil Procedure provides for class actions which may enhance the efficacy of private actions by permitting citizens to combine their limited resources to

achieve a more powerful litigation posture. * * * The fact that a successful antitrust suit for damages recovers not only the costs of the litigation, but also attorney's fees, should provide no scarcity of members of the Bar to aid prospective plaintiffs in bringing these suits." Hawaii v. Standard Oil Company of California, 405 U.S. at 266, 92 S.Ct. at 893.

For a criticism of the efficacy of the class action procedures in private antitrust litigation, see Handler, The Shift from Substantive to Procedural Innovations in Antitrust Suits—The Twenty-Third Annual Antitrust Review, 71 Colum.L.Rev. 1, 9–10 (1971).

9. This form of *parens patriae* action has also been labeled a "Class Action Supplement" by one commentator. Note, State Protection of its Economy and Environment : Parens Patriae Suits for Damages, 6 Colum.J.L. & Soc.Prob. 411, 423–32 (1970) [hereinafter cited as State Protection]. This characterization seems to be a more accurate description of the form of action presented by California than *"parens patriae."* No matter how it is labeled, a basic problem still exists. The class action safeguards of Fed.R.Civ. P. 23 are absent. *See* note 11 *infra.*

10. The California Unclaimed Property Act, Cal.Civil Pro.Code § 1500 et seq. (West 1972), provides that intangible property held by the state and unclaimed by the owner for more than seven years escheats to the state.

est equivalent of the recovery which, individually, is beyond their reach.

■ This may be a worthy state aim, but in our judgment it is not the type of state action taken to afford the sort of benefit that the common-law concept of *parens patriae* contemplates. The means for conferring such benefit, based as they are on management and acquisition of the property of others, free from the safeguards which legislation and rule have thrown up around both guardianships and class actions, constitute state action of a sort that does not fit the common-law concept. We would, in effect, be restoring to the substance of the common law rules of law in an area which has been pre-empted by legislation because of the need for careful control. [11]

The state most persuasively argues that it is essential that this sort of proceeding be made available if antitrust violations of the sort here alleged are to be rendered unprofitable and deterred. It would indeed appear that the state is on the track of a suitable answer (perhaps the most suitable yet proposed) to problems bearing on antitrust deterrence and the class action as a means of consumer protection. We disclaim any intent to discourage the state in its search for a solution.

However, if the state is to be empowered to act in the fashion here sought we feel that authority must come not through judicial improvisation but by legislation and rule making, where careful consideration can be given to the conditions and procedures that will suffice to meet the many problems posed by one's assertion of power to deal with another's property and to commit him to actions taken in his behalf.

---

11. A number of theories have been advanced concerning ways to provide individual citizens with equivalency recovery. For a discussion of the more prominent theories *see* State Protection, *supra*, note 9, at 424–29; Damage Distribution, *supra*, note 3, at 453.

To a greater or lesser degree these theories attempt to utilize class action principles without the class action safeguards so carefully worked out by the drafters.

"The first [policy] argument offered as support for the extension of *parens patriae* capacity to treble damage claims based on injury to individual consumers, which concerns the inadequacy of the class action device provided by Rule 23 is as follows: Where the nature of antitrust litigation precludes separate damage suits by individual consumers, and the careful framework of Rule 23 makes a class action untenable, there may be no practical remedy for an antitrust violation. An action by the State, as parens patriae, would (so the argument goes) be a logical substitute in such cases. This position, however, ignores the difficult problems which the Supreme Court and the Advisory Committee attempted to resolve when they revised Rule 23 in 1966. The joining of the claims of numerous, dispersed claimants in a single judicial action is inherently complicated and requires safeguards if injustice is to be avoided.

In essence, the class action procedure permits numerous absent parties to be represented, but it does so by tying their fate to that of the representative plaintiff and by requiring that both representative and class members stand or fall together. * * * to ensure the fairness of the use of this device, the Rule mandates * * * that the court find that all of the members of the alleged class are in similar legal positions. Indeed, if the purported representatives were to have interests which might conflict with those of absent parties, the entire procedure would be open to constitutional attack. The proposed parens patriae device would disregard all of Rule 23's safeguards without providing new guidelines as to when such wholesale determination of claims may be appropriate or even within the bounds of due process. Furthermore, since a parens patriae suit for the benefit of consumers would not necessarily preclude a class action on behalf of the same individuals, defendants could well be faced with two massive actions based on identical claims. This would * * * frustrate not only the careful balancing of policy factors, but also the goal of judicial economy which the draftsmen of Rule 23 sought to achieve." Malina & Blechman, Parens Patriae Suits for Treble Damages Under the Antitrust Laws, 65 Nw.L.Rev. 193, 215–17 (1970).

We conclude that the authority of the state to act here as representative of its citizens cannot be founded on its common-law capacity as *parens patriae*.

Reversed and remanded with directions that the state's cause of action No. 2 be dismissed.