**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellee,**

v.

**KENTUCKY RETIREMENT SYS-
TEMS; Jefferson County Sheriff's Of-
fice; Commonwealth of Kentucky, De-
fendants–Appellants.**

Nos. 00–5664, 00–6366, 00–6367.

United States Court of Appeals,
Sixth Circuit.

Aug. 2, 2001.

---

Before JONES, DAUGHTREY, and COLE, Circuit Judges.

**OPINION**

COLE, Circuit Judge.

Plaintiff–Appellant the Equal Employment Opportunity Commission ("EEOC") filed suit against Defendants–Appellants Kentucky Retirement Systems, Jefferson County Sheriff's Office, and the Commonwealth of Kentucky, challenging the manner in which Defendants calculate, and determine eligibility for, disability retirement benefits. The EEOC alleges that Defendants maintain a disability and retirement program that denies benefits, or pays reduced benefits, to individuals age forty or older in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. By order dated May 4, 2000, the district court denied Defendants' Fed.R.Civ.P. 12(b)(6) motions, which claimed immunity under the Tenth and Eleventh Amendments to the Constitution. In this consolidated interlocutory appeal, Defendants argue that the district court erred insofar as they are immune from suit as a matter of law under the Tenth and Eleventh Amendments. For

the reasons that follow, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

## BACKGROUND

Kentucky Retirement Systems ("KRS") administers a state retirement plan in accordance with the provisions of Ky.Rev. Stat. § 61.510 et seq. The EEOC filed a complaint against Defendants challenging Kentucky's statutory scheme on grounds that the eligibility requirements and the manner in which disability retirement benefits are calculated violate the ADEA.[1] The EEOC requested in relevant part that the district court: (1) grant a permanent injunction enjoining Defendants from engaging in any employment practice which discriminates on the basis of age against individuals forty years of age and older; (2) order the Commonwealth to enact permanent legislation providing that KRS disability retirement benefits will be granted and calculated without regard to age; (3) order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals forty years of age and older, and which eradicate the effects of their past and present unlawful employment practices; (4) order Defendants to make whole Charles Lickteig[2] and the class of individuals whose monetary benefits are being unlawfully withheld as a result of the acts complained of above, by restraining the continued holding of amounts owing as back benefits with prejudgment interest and recalculated future benefits, in amounts to be determined at trial; and (5) order Defendants to make whole all individuals adversely affected by the unlawful practices described above, by providing any other affirmative relief necessary to eradicate the effects of their unlawful practices, including but not limited to reimbursement for the purchase of years of service.

KRS, Jefferson County, and the Commonwealth moved to dismiss the complaint on grounds that its retirement plan falls within the residuary sovereignty of the State derived from the Tenth and Eleventh Amendments. The district court denied the motions, and by order dated November 2, 2000, we consolidated the cases for purposes of this appeal. Defendants argue on appeal that: (1) the Eleventh Amendment bars application of the ADEA to Defendants under *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), despite the fact that the pending suit was brought by the EEOC rather than a private individual; and (2) the EEOC's lawsuit–in particular, its request for an order directing the

---

**1.** The EEOC alleges that Ky.Rev.Stat. §§ 16.582, 61.600, and 61.605, in particular, are discriminatory. Section 16.582 codifies disability retirement provisions applying to Kentucky's State Police Retirement System, and §§ 61.600 and 61.605 set forth the provisions of disability retirement and allowance for other public employees. *See* Ky.Rev.Stat. Ann. §§ 16.582, 61.600, 61.605. Specifically, the EEOC claims that Defendants discriminate against a class of individuals age forty and older by (1) denying disability retirement benefits to individuals over age fifty-five in hazardous positions; (2) denying disability retirement benefits to individuals over age sixty-five in non-hazardous positions; and (3) paying lower disability retirement benefits to old-

er workers with the same earnings and years of service as younger workers, based solely on age at the date of disability.

**2.** Lickteig was employed in a "hazardous duty" position for the Jefferson County Sheriff's Department, a participant in the County Employees Retirement System operated by KRS. When Lickteig became unable to work due to a disabling condition, he applied to KRS for disability retirement benefits. KRS notified Lickteig that under Kentucky law, he was ineligible for disability retirement benefits because of his age. Lickteig filed a charge with the EEOC, alleging age discrimination in violation of the ADEA.

Commonwealth "to enact permanent legislation" in compliance with the ADEA–violates sovereign immunity principles under the Tenth Amendment. We will address each argument in turn.

## DISCUSSION

We review de novo a district court's denial of a motion to dismiss for failure to state a claim upon which relief can be granted. *See Michigan Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 865 (6th Cir.2000). To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988) (internal quotations and citation omitted).

> We must treat as true all of the well-pleaded allegations of the complaint. All allegations must be construed in the light most favorable to the plaintiff. In order for a dismissal to be proper, it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint.

*Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir.1996) (citations omitted).

### I. Eleventh Amendment

The Eleventh Amendment to the Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. Thus, the Eleventh Amendment denies federal jurisdiction over suits against non-consenting States. *See College Savings Bank v. Flor-*

*ida Prepaid Postsecondary Ed. Expense Bd. .*, 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). The Supreme Court has recognized that Congress may abrogate States' immunity under the enforcement provision of § 5 of the Fourteenth Amendment. *See City of Boerne v.. Flores*, 521 U.S. 507, 517, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). To do so, Congress must satisfy two requirements: (1) it must "unequivocally express[ ] its intent to abrogate immunity" and (2) it must act "pursuant to a valid exercise of power." *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (internal quotation marks and citation omitted).

Here, Defendants concede that the first prong of this two-part inquiry is met in that Congress clearly expressed in the ADEA its intent to abrogate States' immunity. *See Kimel v. Florida Board of Regents*, 528 U.S. 62, 75–76, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Defendants argue, however, that the second prong has not been met because the ADEA exceeds the scope of Congress's § 5 enforcement powers, and thus, the ADEA was not enacted pursuant to a valid grant of constitutional authority. Defendants rely on *Kimel*, a division in which the Supreme Court held that the ADEA is not a valid exercise of Congress's power under § 5 of the Fourteenth Amendment and that Congress therefore did not validly abrogate the States' sovereign immunity to suits by private individuals. *Id.* at 91, 120 S.Ct. 631. Unlike the case before us, however, *Kimel* involved an ADEA challenge brought by *private* individuals rather than a federal agency. The more appropriate analysis must begin with the Supreme Court's decision in *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), *superseded by* 29 U.S.C. § 623(j)),

*as stated in Kopec v. City of Elmhurst,* 193 F.3d 894 (7th Cir.1999).

In *Wyoming,* the Supreme Court considered the constitutional validity of Congress's extension of the ADEA to state and local governments. The Court addressed an ADEA action brought by the EEOC against the State of Wyoming and various state officials, challenging the state's policy of mandatory retirement of its game wardens at the age of fifty-five. The EEOC filed suit seeking relief on behalf of a game warden, who had been forced to retire, and other similarly situated individuals. In resolving a Tenth Amendment challenge, the *Wyoming* Court held that the ADEA constitutes a valid exercise of Congress's power under Article I's Commerce Clause, stating, "The extension of the ADEA to cover state and local governments, both on its face and as applied in this case, was a valid exercise of Congress's powers under the Commerce Clause." *Id.* at 243, 103 S.Ct. 1054. The Supreme Court since has recognized, however, that Congress's power under the Commerce Clause does not include the power to subject States to suit at the hands of private individuals. *See Seminole Tribe,* 517 U.S. at 72–73, 116 S.Ct. 1114. Because *Wyoming* dealt with a challenge brought under Article I's Commerce Clause, the Court did not decide whether the ADEA also could be upheld as an exercise of Congress's powers under § 5 of the Fourteenth Amendment. *See Wyoming,* 460 U.S. at 243, 103 S.Ct. 1054. That question was not addressed until *Kimel.*

Defendants argue that although *Kimel* addressed only States' immunity to suits brought by private individuals, the decision as a whole represents a general anathema of the ADEA as applied to the States. Defendants assert that *Kimel* clearly illustrates the Court's denouncement of Congress's attempt to apply the ADEA to the States:

A review of the ADEA's legislative record as a whole, then, reveals that Congress had virtually no reason to believe that state and local governments were unconstitutionally discriminating against their employees on the basis of age. Although that lack of support is not determinative of the § 5 inquiry, Congress' failure to uncover any significant pattern of unconstitutional discrimination here confirms that Congress had no reason to believe that broad prophylactic legislation was necessary in this field. In light of the indiscriminate scope of the Act's substantive requirements, and the lack of evidence of widespread and unconstitutional age discrimination by the States, we hold that the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment. The ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid.

. . . .

State employees are protected by state age discrimination statutes, and may recover money damages from their state employers, in almost every State of the Union. Those avenues of relief remain available today, just as they were before this decision.

*Kimel,* 528 U.S. at 91, 120 S.Ct. 631. Defendants argue, "Given the strong statements in *Kimel* concerning the lack of a basis for authorizing suits by private individuals under the ADEA, [the] EEOC should not be permitted to circumvent the prohibition against suits by private individuals by suing for monetary damages in its name on their behalf."

■ Defendants' argument is without merit. The Supreme Court long has recognized that "States retain no sovereign immunity as against the Federal Govern-

ment." *West Virginia v. United States,* 479 U.S. 305, 312 n. 4, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987); *see also Monaco v. Mississippi,* 292 U.S. 313, 329, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) (holding that federal jurisdiction over "a suit by the United States against a State, albeit without consent of the latter ... is inherent in the constitutional plan"). In *Seminole Tribe,* the Court recognized that notwithstanding States' immunity from private suits, "[t]he Federal Government can bring suit in federal court against a State" as a method "of ensuring the States' compliance with federal law." *Seminole Tribe,* 517 U.S. at 71 n. 14, 116 S.Ct. 1114. The Court reaffirmed this principle in *Alden v. Maine,* 527 U.S. 706, 755–56, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), when it addressed a private suit brought against the state under the Fair Labor Standards Act ("FLSA"). While upholding Maine's assertion of sovereign immunity to defeat the private suit, the Court emphasized that such immunity does not insulate a state from an enforcement action brought by the federal government. *Id.* at 755, 119 S.Ct. 2240 ("In ratifying the federal Constitution, the States consented to suits brought by other States or by the Federal Government.").

It was according to this well-established principle that *Kimel* expressly limited the nature of its holding:

> Our decision today does not signal the end of the line for employees who find themselves subject to age discrimination at the hands of their state employers. We hold only that, in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits *by private individuals.*

*Id.* at 91, 120 S.Ct. 631 (emphasis added). Defendants do not dispute that as the federal agency charged with enforcing the ADEA's prohibition against discriminatory employment practices based on age, the EEOC has the authority to enforce the rights of employees who have been subjected to unlawful age discrimination. *See* 29 U.S.C. § 626. However, Defendants argue that the suit before us simply disguises an ADEA suit brought by a private individual and, therefore, is forbidden by the Eleventh Amendment. Defendants argue:

> In this regard, the action brought by the EEOC is indistinguishable from one brought by a private individual. Without question, if the monetary damage claim had been brought by Charles Lickteig or any other member of the alleged class, the holding in *Kimel* would compel its dismissal. The District Court erred in its belief that the substitution of the EEOC as plaintiff leads to a different result.

We agree that had the suit been brought by a private individual, it would be barred by the Eleventh Amendment. However, this suit was brought by the EEOC, a federal agency charged by Congress to enforce the ADEA's prohibition against discriminatory employment practices based on age. *See* 29 U.S.C. § 626. The EEOC has the authority to investigate alleged age discrimination and must "attempt to eliminate the discriminatory practices alleged, and to effect voluntary compliance" with statutory requirements "through informal methods of conciliation, conference, or persuasion." 29 U.S.C. § 626(a), (b). In the event that such efforts are unsuccessful, the EEOC is authorized to bring a civil enforcement action to obtain "such legal or equitable relief as may be appropriate to effectuate the purposes" of the statute, "including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability" for monetary relief in "[a]mounts owing to a person as a result of a violation." 29 U.S.C. § 626(b).

The Supreme Court has recognized that although "the EEOC is not merely a proxy for the victims of discrimination[,] ... [w]hen the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *General Tel. Co. v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court noted that the EEOC has independent authority to investigate age discrimination and bring a civil enforcement action. *See id.* at 28, 111 S.Ct. 1647; *see also EEOC v. Frank's Nursery & Crafts*, 177 F.3d 448, 458 (6th Cir.1999) ("[T]he EEOC alone possesses the discretion as to how and when it shall carry out its administrative duties and thus does not function simply as a vehicle for conducting litigation on behalf of private parties.") (internal quotation marks and citation omitted). As recently observed by the Supreme Court in *Alden:*

> A suit which is commenced and prosecuted against a State in the name of the United States by those who are entrusted with the constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const., Art. II, § 3, differs in kind from the suit of an individual: While the Constitution contemplates suits among the members of the federal system as an alternative to extralegal measures, the fear of private suits against nonconsenting States was the central reason given by the founders who chose to preserve the States' sovereign immunity. Suits brought by the

United States itself require the exercise of political responsibility for each suit prosecuted against a State, a control which is absent from a broad delegation to private persons to sue nonconsenting States.

*Alden*, 527 U.S. at 755–56, 119 S.Ct. 2240.[3]

Because the Eleventh Amendment does not shield a State from suit brought by a federal government agency to enforce a federal law, the district court properly denied Defendants immunity on Eleventh Amendment grounds.

## II. Tenth Amendment

The Tenth Amendment to the Constitution provides:

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

U.S. CONST. amend. X. As illustrated below, the standard by which a State's claim to Tenth Amendment immunity is evaluated has "traveled an unsteady path." *New York v. United States*, 505 U.S. 144, 160, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

In *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the Supreme Court ruled that the Commerce Clause does not empower Congress to enforce the minimum wage and overtime provisions of the FLSA against the States "in areas of traditional governmental functions." *Id.* at 852, 96 S.Ct. 2465. Following this decision, courts were required to identify "traditional governmental functions" in order to address claims of Tenth Amendment immunity.

---

**3.** It also bears noting that the ADEA action at issue in the *Wyoming* case was brought by the EEOC on behalf of a private individual and sought declaratory and injunctive relief, back pay, and liquidated damages on behalf of the game warden, who had been forced to retire pursuant to the state's mandatory retirement statute, and others similarly situated. *See Wyoming*, 460 U.S. at 235, 103 S.Ct. 1054. Theses facts are directly analogous to the case before us. The *Wyoming* Court did not consider the suit to be one disguised as an ADEA action brought by a private individual. *See id.* at 243–44, 103 S.Ct. 1054.

*See id.* Nearly ten years later, the Supreme Court expressly overruled *National League of Cities,* recognizing that "the attempt to draw the boundaries of state regulatory immunity in terms of 'traditional governmental function' is not only unworkable but inconsistent with established principles of federalism." *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 531, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Rejecting "as unsound in principle and unworkable in practice, a rule of state immunity from federal regulation that turns on a judicial appraisal of whether a particular government function is integral or traditional," *id.* at 547, 105 S.Ct. 1005, the Court emphasized that the role of the States in the federal system is guaranteed by the constitutional structure of the federal government itself rather than by external limits imposed on Congress's power via the Tenth Amendment, *see id.* at 547–51. *Garcia* determined that given the controls built into the constitutional framework itself, "[t]he political process ensures that laws that unduly burden States will not be promulgated." *Id.* at 556, 105 S.Ct. 1005.

After *National League of Cities* but before *Garcia,* the Supreme Court decided *Wyoming,* holding that the ADEA did not violate state sovereignty under the Tenth Amendment and that Congress acted within its authority under the Commerce Clause when it extended the ADEA to cover state employees. *See Wyoming,* 460 U.S. at 243, 103 S.Ct. 1054. Measured under the *National League of Cities* standard, the *Wyoming* Court held, "The extension of the ADEA to cover state and local governments, both on its face and as applied in this case, was a valid exercise of Congress's powers under the Commerce Clause." *Id.*

Defendants argue that because *Wyoming's* Tenth Amendment analysis was based on *National League of Cities,* the Court's subsequent overruling of *National League of Cities* somehow calls into question the validity of *Wyoming.* As the EEOC points out, however, *Garcia* established a far less stringent standard than that articulated in *National League of Cities* to determine whether federal legislation under the Commerce Clause impairs state sovereignty under the Tenth Amendment. Thus, *Garcia* merely reinforced the Court's determination in *Wyoming* that Congress is constitutionally authorized to require state employers to abide by the ADEA.

Defendants also try to distinguish *Wyoming* by arguing that application of the ADEA to the State of Wyoming's mandatory retirement policy had neither a direct nor obvious negative effect on the State's finances, and thus, it created a much more limited intrusion into state sovereignty than in the present case. As Defendants provide no evidence to support this assertion, we are to assume that it in fact would be less of a financial burden to abandon a mandatory retirement age than to allow the ADEA to dictate the manner in which eligibility for, and amount of, disability benefits is determined. Although there might have been less of a financial burden imposed on the State in *Wyoming* than there would be in the present case, this point is not dispositive of Defendants' Tenth Amendment immunity claim.

*Garcia* is not the Supreme Court's final word on the Tenth Amendment, and we therefore must review the Court's more recent decisions in order to understand where the Court has drawn the line between congressional action that violates state sovereignty and that which does not. Not long after *Garcia,* South Carolina raised a Tenth Amendment challenge to a federal statute that prohibited States from issuing unregistered bonds. *See South Carolina v. Baker,* 485 U.S. 505, 108 S.Ct.

1355, 99 L.Ed.2d 592 (1988). The Court upheld the law because it merely regulated state activities, rather than sought to control or influence the manner in which States regulate private parties. *See id.* at 514–515, 108 S.Ct. 1355.

Four years later, in *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), the Supreme Court addressed a Tenth Amendment challenge to the federal Low–Level Radioactive Waste Policy Amendments Act, which provided three types of incentives "to encourage the States to comply with their statutory obligation to provide for the disposal of waste generated within their borders." *Id.* at 152, 112 S.Ct. 2408. In *New York,* the State argued that the Act impermissibly directed the States to regulate the field in contravention of the Tenth Amendment. The Supreme Court agreed insofar as one of the incentives, the "take title" provision, effectively coerced the States to administer the federal program in violation of Tenth Amendment state sovereignty. *See id.* at 174–76, 112 S.Ct. 2408. The Court explained, "[T]his is not a case in which Congress has subjected a State to the same legislation applicable to private parties," but "instead concerns the circumstances under which Congress may direct or otherwise motivate the States to regulate in a particular field or a particular way." *Id.* at 160–61, 112 S.Ct. 2408. In striking down the "take title" provision, the *New York* Court stated:

> Congress exercises its conferred powers subject to the limitations contained in the Constitution. Thus, for example, under the Commerce Clause Congress may regulate publishers engaged in interstate commerce, but Congress is constrained in the exercise of that power by the First Amendment. The Tenth Amendment likewise restrains the power of Congress, but this limit is not derived from the text of the Tenth Amendment itself, which, as we have

discussed, is essentially a tautology. Instead, the Tenth Amendment confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States. The Tenth Amendment thus directs us to determine, as in this case, whether an incident of state sovereignty is protected by a limitation on an Article I power.

*Id.* at 157–58, 112 S.Ct. 2408. Because Congress lacks the authority to "command state legislatures to legislate," *id.* at 179, 112 S.Ct. 2408, the Court held that requiring States to accept ownership of waste or to regulate according to instructions of Congress lies outside Congress's enumerated powers and is inconsistent with Tenth Amendment, *see id.* at 174–76, 112 S.Ct. 2408. The Court emphasized, "While Congress has substantial powers to govern the Nation directly, including in areas of intimate concern to the States, the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions." *Id.* at 162, 112 S.Ct. 2408.

In *Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), the Supreme Court applied this same Tenth Amendment analysis to invalidate a provision of federal law requiring state and local law enforcement officers to conduct background checks on prospective handgun purchasers. The *Printz* Court stated:

> We held in *New York* that Congress cannot compel the States to enact or enforce a federal regulatory program. Today we hold that Congress cannot circumvent that prohibition by conscripting the State's officers directly. *The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to adminis-*

*ter or enforce a federal regulatory program.*

*Id.* at 935, 117 S.Ct. 2365 (emphasis added).

The Court recently reaffirmed the distinction between generally applicable laws that regulate state activities in the same manner as private conduct and those that seek to control or influence the manner in which the States regulate private conduct. *See Reno v. Condon,* 528 U.S. 141, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000). There, the Court upheld the constitutionality of the federal Driver's Privacy Protection Act ("DPPA"), which established "a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent." *Id.* at 144. *Condon* explained:

> In *New York* and *Printz,* we held federal statutes invalid, not because Congress lacked legislative authority over the subject matter, but because those statutes violated the principles of federalism contained in the Tenth Amendment. In *New York,* Congress commandeered the state legislative process by requiring a state legislature to enact a particular kind of law.... In *Printz,* we invalidated a provision of the Brady Act which commanded state and local enforcement officers to conduct background check on prospective handgun purchasers.
>
> ....
>
> We agree with South Carolina's assertion that the DPPA's provisions will require time and effort on the part of state employees, but reject the State's argument that the DPPA violates the principles laid down in either *New York* or *Printz.* We think, instead, that this case is governed by our decision in *South Carolina v. Baker.*
>
> ....
>
> Like the statute at issue in *Baker,* the DPPA does not require the States in their sovereign capacity to regulate their

own citizens. The DPPA regulates the States as the owners of databases. *It does not require the South Carolina Legislature to enact any laws or regulations, and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals.* We accordingly conclude that the DPPA is consistent with the constitutional principles enunciated in *New York* and *Printz.*

*Id.* at 149–51, 120 S.Ct. 666 (internal quotation marks and citations omitted) (emphasis added).

■ Here, Defendants point to section D of the EEOC's prayer for relief, which specifically requests that the district court "[o]rder Defendant Commonwealth to enact permanent legislation providing that KRS disability benefits will be granted and calculated without regard to age." Defendants argue that the EEOC cannot direct the Commonwealth "to enact permanent legislation," insofar as forcing the Commonwealth to do so would violate the Tenth Amendment. We agree.

The Supreme Court could not have been more clear on this point:

> [N]o Member of the Court has ever suggested that such a federal interest would enable Congress to command a state government to enact state regulation. No matter how powerful the federal interest involved, the Constitution simply does not give Congress the authority to require the States to regulate. The Constitution instead gives Congress the authority to regulate matters directly and to preempt contrary state regulation. Where a federal interest is sufficiently strong to cause Congress to legislate, it must do so directly; it may not conscript state governments as its agents.

*New York,* 505 U.S. at 161, 178, 112 S.Ct. 2408; *see also Printz,* 521 U.S. at 935, 117 S.Ct. 2365 ("The Federal Government may

neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program."); *Condon,* 528 U.S. at 149, 120 S.Ct. 666 ("While Congress has substantial powers to govern the Nation directly, ... the Constitution has never been understood to confer upon Congress the ability to the require the States to govern according to Congress' instructions.").

Thus, the EEOC cannot force the Commonwealth "to enact permanent legislation providing that KRS disability benefits will be granted and calculated without regard to age." Indeed, as the parties agree, the Commonwealth is not even required to provide a disability retirement system. In the event that such a system exists, however, Defendants must award benefits without regard to age. Accordingly, to the extent that the EEOC seeks Defendants' compliance with the ADEA, as well as relief on behalf of Charles Lickteig and those similarly situated for ADEA violations, Defendants are not entitled to immunity on either Tenth or Eleventh Amendment grounds.

## CONCLUSION

Accordingly, we REVERSE the district court's denial of immunity with regard to section D of the EEOC's prayer for relief and hold that Defendants are entitled to Tenth Amendment immunity from a mandate that it "enact permanent legislation," we AFFIRM the district court's denial of immunity in all other respects, and we REMAND for further proceedings consistent with this opinion.