OKLAHOMA ex rel. JOHNSON, BANK COMMISSIONER, *v.* COOK.

No. —, Original.—Decided May 23, 1938.

388

*Messrs. Francis C. Brown* and *Houston E. Hill* were on a brief for plaintiff.

*Messrs. R. B. Caldwell, Blatchford Downing, Lynn Webb,* and *John W. Oliver* were on a brief for defendant.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The State of Oklahoma, upon the relation of its Bank Commissioner, asks leave to bring suit in this Court to enforce the statutory liability of a shareholder of a state bank which is in course of liquidation.

The statutes of Oklahoma provide that the shareholders of every bank organized under the state law "shall be additionally liable for the amount of stock owned." Okla. Stat. 1931, § 9130. The Bank Commissioner, when satisfied of the insolvency of a bank, may take possession of its assets and "proceed to wind up its affairs and enforce the personal liability of the stockholders." *Id.*, § 9172. That liability becomes due when the Bank Commissioner takes possession of the bank and his order finding the bank to be insolvent is conclusive evidence of that fact. *Id.*, § 9174. The Bank Commissioner is authorized to "prosecute all suits necessary for the liquidation of the assets of the insolvent corporations taken over by him" and such suits are to brought "in the name of the State of Oklahoma, on the relation of the Bank Commissioner." If, after liquidation and payment in full of depositors and creditors, any assets remain in the hands of the Bank Commissioner, they revert to the stockholders. *Id.*, § 9173.

The statutes further provide that "The State of Oklahoma, on the relation of the Bank Commissioner, shall be deemed to be the owner of all of the assets of failed banks in his hands for the use and benefit of the depositors and creditors of said bank." *Id.*, § 9179. No costs are required to be paid by the State in any suit in which the State of Oklahoma, on the relation of the Bank Commissioner, is a party, and preference is directed to be given in the courts of the State to all matters pending in such suits. *Id.*

The proposed complaint alleges that in May, 1931, the Bank Commissioner took possession of the Osage Bank of Fairfax, Osage County, finding it to be insolvent, and proceeded to wind up its affairs and enforce the personal liability of its stockholders; that the defendant, R. M. Cook, was the owner of sixty-nine shares of the capital stock of the bank of the par value of $100, and became liable to the State of Oklahoma, upon the relation of its Bank Commissioner, in the sum of $6900, with interest; that the defendant has paid the sum of $2300 in part satisfaction and that the balance is due; that the Bank Commissioner has liquidated all the assets of the bank except the claim here presented and certain other claims against other stockholders; that dividends have been paid to depositors and creditors amounting to ninety-one per cent. of their claims and that the enforcement of the statutory liability of the defendant is necessary to discharge the liabilities of the bank.

In answer to the rule to show cause why leave to bring this suit should not be granted, the proposed defendant contends that the cause of action is not within Article III, § 2, Clause 2, of the Constitution providing for the original jurisdiction of this Court.

The purpose in creating the stockholder's liability, the authority conferred upon the Bank Commissioner to enforce it, and the relation of the State to its enforcement,

are clearly set forth in the decisions of the Supreme Court of Oklahoma. In *State ex rel. Mothersead* v. *Kelly*, 141 Okla. 36; 284 P. 65, the court said:

"What is this stockholder's liability and for whose benefit is it created?

"It was designed solely for the benefit of creditors and constitutes a fund available only when the bank is insolvent and thus rendered unable to meet its liabilities in full. The corporation itself has no authority over the fund and cannot either compel its payment or by any act on its part release the stockholder therefrom. It amounts, for all practical purposes, to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet the payment of obligations of the corporation. It is limited to an amount equal to the par value of the stock held and owned by each stockholder and exists in favor of the creditors collectively, not separately, and in proportion to the amount of their respective claims against the corporation. . . ." (*Id.*, pp. 37, 38; 284 P. 66.)

The court added that "the Bank Commissioner alone is empowered by law to prosecute an action to enforce the stockholders' liability." *Id.*, p. 41; 284 P. 69. See also *American Exchange Bank* v. *Rowsey*, 144 Okla. 172, 173; 289 P. 726; *Griffin* v. *Brewer*, 167 Okla. 654, 655; 31 P. 2d 619.

In *State ex rel. Murray* v. *Pure Oil Co.*, 169 Okla. 507; 37 P. 2d 608, referring to the provision of the statute authorizing the Bank Commissioner to institute all suits necessary for the liquidation of the assets of the insolvent corporations taken over by him and providing that such suits shall be brought in the name of the State, on the relation of the Bank Commissioner, the court said:

"Since the state is the proper party plaintiff by virtue of the above statute, it may maintain the action regardless of whether it is the real party in interest or merely

a nominal plaintiff for the use and benefit of depositors and creditors. An action may be maintained by one expressly authorized by statute even though that person is not in fact the real party in interest. Section 144, O. S. 1931. . . .

"The protection of depositors of insolvent state banks is a distinct economic policy of the state. . . . In so far as the object of this action is to further the established economic policy of the state, the state may be said to have a real interest created by its governmental policy, as distinguished from a mere nominal interest, even though the pecuniary benefits of the litigation, if ultimately successful, go to the depositors and creditors of the insolvent bank.

"The statute (section 9173, supra) which authorizes the state to be a party plaintiff names the Bank Commissioner as the proper officer to institute legal actions and carry out this economic policy. . . .

"The nature of the powers vested by law in the Bank Commissioner *have* been many times considered by this court and their exclusive character recognized. . . .

"It was the legislative intent that litigation of this character should be instituted and conducted under the direct supervision of the Bank Commissioner through the staff of legal assistants provided by law for that purpose, and not by the Governor, nor through independent action." *Id.,* pp. 509–512; 37 P. 2d 610.

Again, in *Richison* v. *State ex rel. Barnett,* 176 Okla. 537, 539; 56 P. 2d 840, 843, the court observed:

"Under the provisions of article 6, chapter 40, O. S. 1931 (sec. 9168 *et seq.*) the state has assumed exclusive jurisdiction and control of the affairs of insolvent banking institutions. By operation of law the Bank Commissioner is the officer through which the state liquidates the assets and winds up the affairs of such institutions. While engaged in the performance of such statutory

duties and functions the Bank Commissioner is performing duties for the benefit of certain members of the public who were depositors in such institution."

The state court has also held that the statute of limitations does not run against the State in an action to enforce the statutory liability of the stockholders. *State ex rel. Shull* v. *McLaughlin,* 159 Okla. 4; 12 P. 2d 1106. And the same rule applies to actions on promissory notes and other claims taken over by the Bank Commissioner as assets of an insolvent bank. *White* v. *State,* 94 Okla. 7; 220 P. 624; *Lever* v. *State ex rel. Shull,* 157 Okla. 162; 111 P. 2d 498; *Richison* v. *State ex rel. Barnett, supra.*

May the State through its Bank Commissioner invoke our original jurisdiction to prosecute claims of this character for the benefit of creditors?

To bring a case within that jurisdiction, it is not enough that a State is plaintiff. *Florida* v. *Mellon,* 273 U. S. 12, 17. Nor is it enough that a State has acquired the legal title to a cause of action against the defendant, where the recovery is sought for the benefit of another who is the real party in interest. *New Hampshire* v. *Louisiana, New York* v. *Louisiana,* 108 U. S. 76. In those cases, provision was made by statutes of New Hampshire and New York for the assignment to the State of the obligations of another State. Thereupon it became the duty of the Attorney General of the State, if in his opinion the claim was a valid one, to bring suit in the name of the State in this Court in order to enforce collection. The money collected was to be held in trust, as stated, and to be paid over to the assignor of the claim. *Id.,* pp. 77, 79. The States, respectively, acquired title to bonds of the State of Louisiana and filed in this Court bills in equity in the name of the State to enforce recovery. The bills were dismissed. The fact that the effort was made to use the name of the complainant States in order to evade the application of the Eleventh Amend-

ment was undoubtedly a controlling consideration, but that consideration derived its force from the fact that the State was not seeking a recovery in its own interest, as distinguished from the rights and interests of the individuals who were the real beneficiaries.

The underlying point of the decision was that in determining the scope of our original jurisdiction under Clause 2 of § 2 of Article III of the Constitution, we must look beyond the mere legal title of the complaining State to the cause of action asserted and to the nature of the State's interest. So, when it appeared in a later case that a State, invoking the original jurisdiction of this Court to enforce the bonds of another State, was the absolute owner of the bonds and was prosecuting the claim upon its own behalf, this Court took jurisdiction. *South Dakota* v. *North Carolina,* 192 U. S. 286. There the Court found that, while the State of South Dakota acquired by gift the bonds of North Carolina, there could not be "any question respecting the title of South Dakota." They were not held, the Court said, by the State as representative of indvidual owners as in the case of *New Hampshire* v. *Louisiana,* 108 U. S. 76, and the motive which induced the transaction was not deemed to "affect its validity or the question of jurisdiction." The case was thus one "directly affecting the property rights and interests of a State." *Id.,* pp. 314, 318.

In determining whether the State is entitled to avail itself of the original jurisdiction of this Court in a matter that is justiciable (see *Massachusetts* v. *Mellon,* 262 U. S. 447, 485), the interests of the State are not deemed to be confined to those of a strictly proprietary character but embrace its *"quasi-sovereign"* interests which are "independent of and behind the titles of its citizens, in all the earth and air within its domain." *Georgia* v. *Tennessee Copper Co.,* 206 U. S. 230, 237. Thus, we have held that a State may sue to restrain the diversion of water from

an interstate stream, *Kansas* v. *Colorado,* 206 U. S. 46, 95, 96, or 'an interference with the flow of natural gas in interstate commerce, *Pennslyvania* v. *West Virginia,* 262 U. S. 553, 592; or to prevent injuries through the pollution of streams or the poisoning of the air by the generation of noxious gases destructive of crops and forests, whether the injury be due to the action of another State or of individuals, *Missouri* v. *Illinois,* 180 U. S. 208, 200 U. S. 496; *Georgia* v. *Tennessee Copper Co., supra; North Dakota* v. *Minnesota,* 263 U. S. 365, 373, 374; *Wisconsin* v. *Illinois,* 278 U. S. 367; 281 U. S. 179.

But this principle does not go so far as to permit resort to our original jurisdiction in the name of the State but in reality for the benefit of particular individuals, albeit the State asserts an economic interest in the claims and declares their enforcement to be a matter of state policy. In *Kansas* v. *United States,* 204 U. S. 331, the State asked leave to file a bill of complaint against the United States and others, seeking a decree adjudging the State to be the owner, as trustee for a railway company, of certain sections of land to the extent of a grant along the line of the railroad through the Creek Nation in the Indian Territory. The Court said that it appeared upon the face of the bill that the State was only nominally a party, that the real party in interest was the railroad company, and that our original jurisdiction "could not be maintained." *Id.,* pp. 340, 341. The Court also held that the United States was the real party in interest as defendant and could not be sued without its consent, but the other question was presented and passed upon.

In *Oklahoma* v. *Atchison, T. & S. F. Ry. Co.,* 220 U. S. 277, the State sought to maintain an action in this Court against the carrier to restrain it from charging unreasonable rates within Oklahoma. Setting forth the congressional grant under which the railway in question was

operated and insisting that the Company was not entitled to charge the inhabitants of Oklahoma a greater freight rate for the transportation of certain commodities than that authorized for similar service in Kansas, the State alleged its interest in the development of its communities and in the success of its industries, and the menace to the future of the State through what was deemed to be a violation of the conditions of the grant. But the Court pointed out that the State was not seeking to protect a direct interest of its own in the transportation of the commodities in question, but was endeavoring to compel the railway company to respect the rights of the shippers of these commodities. *Id.*, pp. 286, 287. The bill was dismissed. The Court summarized its conclusion in these words:

"We are of the opinion that the words, in the Constitution, conferring original jurisdiction on this court, in a suit 'in which a State shall be a party' are not to be interpreted as conferring such jurisdiction in every cause in which the State elects to make itself strictly a party plaintiff of record and seeks not to protect its own property, but only to vindicate the wrongs of some of its people or to enforce its own laws or public policy against wrongdoers, generally." *Id.*, p. 289.

See, also, *Louisiana* v. *Texas,* 176 U. S. 1.

In the instant case, the State has taken the legal title to the assets of the insolvent bank which is being liquidated and to the claims against stockholders by reason of their statutory liability. But recovery is sought solely for the benefit of the depositors and creditors of the bank. *State ex rel. Mothersead* v. *Kelly, supra; State ex rel. Murray* v. *Pure Oil Co., supra: Richison* v. *State ex rel. Barnett, supra.* Constituting the State a virtual trustee for the benefit of the creditors of the bank did not alter the essential quality of the rights asserted or avail to con-

fer jurisdiction upon this Court to entertain a suit for their enforcement. *New Hampshire* v. *Louisiana, New York* v. *Louisiana, supra; Kansas* v. *United States, supra; Oklahoma* v. *Atchison, T. & S. F. Ry. Co., supra.* The taking of the legal title by the State is a mere expedient for the purpose of collection.

It will be noted that the State not only undertakes to enforce the statutory liability of stockholders but, as the State takes title to all the assets of the insolvent bank, suits upon promissory notes and various claims of the bank in the course of the liquidation are to be brought in the name of the State acting through its Bank Commissioner. The declared policy and asserted economic interest of the State attach as well to the prosecution of all such suits. If the contention of the State were accepted, it would follow that suits upon claims of the bank against citizens of other States could be brought in this Court. Many States have statutory provisions for the liquidation through state officers of insolvent banks, trust companies, insurance companies, etc., and if, by the simple expedient of providing that the title to the assets of such institutions should vest in the State and that suits in the course of liquidation should be prosecuted in the name of the State, resort to our original jurisdiction were permitted, the enormous burden which would thereby be imposed upon this Court can readily be imagined,—a burden foreign to the purpose of the constitutional provision. These considerations emphasize the importance of strict adherence to the governing principle that the State must show a direct interest of its own and not merely seek recovery for the benefit of individuals who are the real parties in interest.

The motion for leave to file complaint is denied.

*Motion denied.*

Mr. Justice Cardozo took no part in the consideration and decision of this case.