**LAND O'LAKES CREAMERIES, Inc., and Maple Island, Inc., Plaintiffs,**

v.

**LOUISIANA STATE BOARD OF HEALTH and H. Luther Hortman, Defendants.**

**Civ. A. 7229.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 21, 1958.

Duke, Porterie & Davidson, Claude W. Duke, Louis B. Porterie, New Orleans, La., for plaintiffs.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Weldon A. Cousins, Asst. Atty. Gen. of Louisiana, James A. Comiskey, New Orleans, La., for the Louisiana State Board of Health, and another, defendants.

Miles Lord, Atty. Gen. of Minnesota, Melvin J. Peterson, Deputy Atty. Gen. of Minnesota, Sydney Berde, Special Asst. Atty. Gen. of Minnesota, for applicant in intervention.

Before WISDOM, Circuit Judge, CHRISTENBERRY, Chief Judge, and WRIGHT, District Judge.

**J. SKELLY WRIGHT, District Judge.**

The original plaintiffs in this action are Minnesota manufacturers of dairy products who sell dried milk in Louisiana. They seek, first, to have a Louisiana statute [1] affecting the labelling of dried milk declared unconstitutional as being arbitrary, discriminatory, and an unreasonable burden on interstate commerce, and, second, to enjoin the officials of the Louisiana State Board of Health from giving effect to the provisions of this statute. Since the remedy sought is restraint of state officers acting pursuant to an allegedly unconstitutional state statute, a three-judge court was convened. 28 U.S.C. § 2281. This opinion is concerned only with the motion of the State of Minnesota, filed by her Attorney General [2] in advance of trial, to intervene in this action as a party plaintiff in order to represent the interests of all dried milk manufacturers in Minnesota not already parties herein. The question presented is whether Minnesota has the required interest in the outcome of this litigation to participate as a party. In short, has she a justiciable interest?

Just what is a justiciable interest is a question which has plagued the courts since the beginning of the judicial process.[3] Although it is difficult, if not impossible, to define such an interest categorically, one of its fundamental requirements certainly is that a party be directly and personally concerned in the outcome of the litigation to the extent that his participation therein will insure "a genuine adversary issue between the parties, without which a court may not safely proceed to judgment." United States v. Johnson, [4] 319 U.S. 302, 304, 63 S.Ct. 1075, 1076, 87 L.Ed. 1413. Such an interest is lacking when a state undertakes to sue for the particular benefit of a limited number of its citizens.[5] In such a posture the state is a "mere volunteer." [6] "(T)he State must show a direct interest of its own and not merely seek recovery for the benefit of individuals who are the real parties in interest." State of Oklahoma ex rel. Johnson v. Cook, 304 U.S. 387, 396, 58 S.Ct. 954, 959, 82 L.Ed. 1416.

Apart from direct proprietary rights, which Minnesota does not, and cannot, here assert, a state may have such an interest only by virtue of its duty to protect the general welfare "as *parens patriae,* trustee, guardian, or representative of all or a considerable portion of its citizens." State of Kansas v. Colorado, 185 U.S. 125, 142, 22 S.Ct. 552, 558, 46 L.Ed. 836. Thus the State of Georgia, as representative of the public, was allowed to bring suit against twenty railroads to enjoin "a wrong, which if proven, limits the opportunities of her people, shackles her industries, retards her development, and relegates her to an inferior economic position among her sister States." State of Georgia v. Pennsylvania R. Co., 324 U.S. 439, 451, 65 S.Ct. 716, 723, 89 L.Ed. 1051. In State of Missouri v. Illinois, 180 U.S.

---

1. Act No. 415 of 1956, LSA–R.S. 40:921.

2. The Attorney General cites, as his authority, Chapter 840 of the Laws of Minnesota for 1955, M.S.A. § 8.13:

   "The attorney general is authorized to take such action as he deems necessary in order to contest or oppose existing statutes, ordinances, regulations, orders or other trade barriers which may restrict the sale in other states of milk or other dairy products produced in Minnesota; * * *."

3. See opinions of Mr. Justice Frankfurter in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 149, 71 S.Ct. 624, 95 L.Ed. 817; Coleman v. Miller, 307 U.S. 433, 460, 59 S.Ct. 972, 83 L.Ed. 1385.

4. See also Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246; Chicago & G. T. R. Co. v. Wellman, 143 U.S. 339, 12 S.Ct. 400, 36 L.Ed. 176.

5. Com. of Massachusetts v. Missouri, 308 U.S. 1, 17, 60 S.Ct. 39, 84 L.Ed. 3; State of Oklahoma v. Atchison, T. & S. F. Ry., 220 U.S. 277, 31 S.Ct. 434, 55 L.Ed. 465. Cf. State of New Hampshire v. Louisiana, 108 U.S. 76, 2 S.Ct. 176, 27 L.Ed. 656.

6. See Com. of Pennsylvania v. West Virginia, 262 U.S. 553, 591, 43 S.Ct. 658, 67 L.Ed. 1117.

208, 21 S.Ct. 331, 45 L.Ed. 497, Missouri was allowed to bring a bill to enjoin the dumping of Chicago sewage into a canal draining into the Mississippi River and poisoning the water supply to Missouri land and residents. The Court said that "if the health and comfort of the inhabitants of a state are threatened, the state is the proper party to represent and defend them." State of Missouri v. Illinois, supra, 180 U.S. at page 241, 21 S.Ct. at page 344. And in State of Georgia v. Tennessee Copper Co., 206 U.S. 230, 27 S.Ct. 618, 51 L.Ed. 1038, Georgia was allowed to sue to enjoin the defendant from discharging noxious gases from its works in Tennessee over Georgia territory.

The State of Minnesota has attempted in her complaint, filed together with her motion to intervene,[7] to bring her interest within the orbit of these cases by characterizing the dairy industry as one which involves "a major economic activity of importance to the welfare of the people of Minnesota." Such an assertion is not determinative of the question of justiciable interest sufficient to participate in the litigation as a party.[8] Minnesota's complaint, which adopts the allegations of the original complaint, concerns only that part of the state's dairy industry which is engaged in the manufacture of dried milk. Notice may be taken of the fact that the dairy industry itself is neither the only nor the largest industry in Minnesota.[9] The dairy industry statistics offered by Minnesota fail to demonstrate that the sale of dried milk is of such pervasive importance to that industry and to Minnesota citizens generally that restrictions on the interstate distribution of dried milk would directly and materially affect the "welfare of the people of Minnesota." Thus the interests of the single industry here

involved must be held to be private interests, not interests affecting the whole economy or all the people of the state. This type of interest is insufficient to give Minnesota the right to sue as parens patriae in behalf of all, or a substantial number, of her citizens.

The interest which Minnesota here asserts is not similar to that asserted by the states in the cases on which Minnesota relies.[10] Minnesota's interest here is more comparable to the interest asserted by the State of Louisiana in Jones ex rel. Louisiana v. Bowles, 322 U.S. 707, 64 S.Ct. 1043, 88 L.Ed. 1551, in which the Governor of Louisiana sought to enjoin enforcement of a Federal Price Administration regulation fixing prices on strawberries, which were alleged to be a crop of major interest to the economy of the state. Denying, per curiam, the sufficiency of Louisiana's interest to justify jurisdiction, the Supreme Court cited, among other cases, not those relied on by Minnesota, but State of New Hampshire v. Louisiana, supra, State of Oklahoma v. Atchison T. & S. F. Ry., supra, and State of Oklahoma ex rel. Johnson v. Cook, supra. These cited cases hold that a state may not sue for the benefit of individual interests, that before a state has standing to sue parens patriae, it must be shown that the interest asserted materially affects the health and welfare of all the people of the state, or at the very least a substantial portion thereof. Thus, in Bowles, supra, the Court held that Louisiana's concern for its strawberry industry was not of such general interest to people of the state as to give the state standing to sue. There is nothing in the record in the present case to show that the interest of the people of Minnesota in dried milk is any greater than the interest of the people of Louisiana in strawberries.

7. See Rule 24(c), Fed.R.Civ.P.

8. See State of Oklahoma ex rel. Johnson v. Cook, supra, 304 U.S. at pages 391, 394, 58 S.Ct. 954.

9. In the World Almanac for 1956, the entire dairy industry is ranked ninth among principal industries in Minnesota.

10. State of Georgia v. Tennessee Copper Co., supra; State of Kansas v. Colorado, supra; State of Missouri v. Illinois, supra; People of State of California v. United States, 9 Cir., 180 F.2d 596.

Notice is taken that a statute of the state of Minnesota specifically gives her Attorney General the authority he is here asserting.[11] However binding that statute may be on the courts of Minnesota,[12] its effect can be little more than persuasive on other courts. Unquestionably, the fact that the Legislature of Minnesota has indicated its interest in the dairy industry should be accorded great weight. Also to be considered, however, is the advisability of allowing the Attorney General of Minnesota to range at large in courts of other states, and of the United States, seeking to have declared unconstitutional laws passed by the legislatures of those states.

Actually, there is no real need that Minnesota intervene herein as a party. The Minnesota dairy industry can adequately protect its own interests. The Minnesota dried milk producers, who are not parties herein, may themselves intervene, or, if they choose, sit on the sidelines and hope for a favorable result. If the result is unfavorable, these producers, not parties, may nevertheless have their own day in court on the same issues at some future time, something they might not be able to do if Minnesota were allowed to intervene as their representative.

In recognition of the interest expressed in these and similar proceedings by the legislature of the State of Minnesota, this court deems it appropriate to exercise its discretion to invite the Attorney General of Minnesota to appear in these proceedings as amicus curiae, to participate fully in the trial of the case, to examine or cross-examine witnesses, and to take other steps deemed advisable which will not interfere with the orderly conduct of this action by the parties thereto. Compare State of Florida v. Georgia, 17 How. 478, 58 U.S. 478, 494, 495, 15 L.Ed. 181,

Motion to intervene as a party denied.

11. See Note 2.

12. Compare 28 U.S.C. § 2403; 11 U.S.C.A. § 608; Securities and Exchange Commission v. U. S. Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293.