[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 10-15976

———————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 16, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:08-cv-01025-MEF-CSC

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

                    versus

ALABAMA DEPARTMENT OF MENTAL
HEALTH AND MENTAL RETARDATION,

                                        Defendant - Appellant.

———————————————

Appeal from the United States District Court
for the Middle District of Alabama

———————————————

(March 16, 2012)


Before DUBINA, Chief Judge, COX, Circuit Judge, and GOLDBERG,* Judge.

GOLDBERG, Judge:

———————————————

*Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by
designation.

Plaintiff-Appellee the United States brought an action against Defendant-Appellant Alabama Department of Mental Health (ADMH).  The United States claimed that ADMH violated the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. 4301 *et seq.*, when it failed to rehire longtime employee Roy Hamilton after his service in Iraq with the Alabama National Guard.  ADMH moved to dismiss the case based on sovereign immunity.[1]  The district court denied ADMH's  motion.  The district court subsequently found that ADMH had violated USERRA by not immediately rehiring Hamilton after his return from Iraq.  The district court ordered ADMH to pay more than $25,000 for the wages and benefits that Hamilton lost because of ADMH's failure to comply with USERRA.

ADMH presents three questions for review in this appeal: 1) whether sovereign immunity bars the U.S. Department of Justice's (DOJ's) action against ADMH; 2) whether the district court erred in finding that ADMH violated USERRA; and 3) whether the district court erred in requiring ADMH to pay money damages to Hamilton for violating USERRA.

For the following reasons, we hold that ADMH is not entitled to sovereign immunity, and that the district court did not err in finding that ADMH violated

---

[1]  We use "Eleventh Amendment immunity" and "sovereign immunity" interchangeably.

2

USERRA and was required to pay money damages. Accordingly, we affirm.

## I. BACKGROUND

Roy Hamilton worked for ADMH at the J.S. Tarwater ("Tarwater") Developmental Center in Montgomery, Alabama from 1987 until his departure for military service in December 2003. In addition to his job at Tarwater, Hamilton was also a member of the Alabama National Guard. In September 2003, the National Guard notified Hamilton that he would be deployed to Iraq at the end of December. Hamilton immediately informed his supervisor of his impending deployment.

In the fall of 2003, ADMH decided to close several of its mental health centers because of financial problems. Tarwater was one of the centers scheduled to be closed. Hamilton was willing to relocate to two of the other centers in Montgomery, but he declined a transfer to a different position at a facility in Tuscaloosa. The transfer to Tuscaloosa was undesirable for two reasons. First, it would have required Hamilton and his family to relocate. Second, although the transfer involved a promotion, the new position's longer hours would have prevented Hamilton from fulfilling his family responsibilities. When Hamilton declined the transfer to Tuscaloosa, ADMH officials repeatedly assured him that they would continue to seek other jobs for him.

On December 23, 2003, Hamilton received his written military orders for deployment. That same day, he gave copies of the orders to his immediate supervisor, the personnel department at Tarwater, and the Tarwater administration. After working on December 29, 2003, Hamilton departed for military leave. On January 15, 2004, ADMH permanently closed Tarwater.

In April 2005, Hamilton was honorably discharged from military service and he returned to Alabama. Shortly thereafter, he sought reemployment at ADMH. For several months, Hamilton attempted to get his job back by making repeated telephone calls and in-person visits. Eventually, he was told that ADMH had lost his records and someone would call him when they located the records. However, no one at ADMH contacted Hamilton. He continued to pursue employment at ADMH. In August 2005, Hamilton took a job in the private sector. In 2007, Hamilton again contacted ADMH, and ADMH finally reemployed him at a hospital in Montgomery in August 2007.

In February 2008, Hamilton filed a complaint under USERRA with the U.S. Department of Labor. The U.S. Department of Labor's Veterans' Employment and Training Service determined that Hamilton's claim had merit, and his case was referred to the DOJ. In December 2008, the United States sued ADMH under USERRA.

4

## II. STANDARD OF REVIEW

Issues of Eleventh Amendment immunity are questions of law, which we review *de novo*. *Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1313 (11th Cir. 2011). We review the district court's factual findings under the "highly deferential" standard of clear error. *Renteria-Marin v. Ag-Mart Produce*, 537 F.3d 1321, 1324 (11th Cir. 2008). We review *de novo* the district court's legal conclusions. *Id.*

## III. RELEVANT LAW

USERRA, 38 U.S.C. § 4301 *et seq.*, represents long-standing national policy intended to encourage service in the armed forces. USERRA requires an employer[2] to promptly reemploy "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services." 38 U.S.C. § 4312(a) (2006). This requirement applies if: (1) the employee gives proper notice to his employer when leaving; (2) the absence is for less than five years; and (3) the employee timely applies for reemployment upon his return. §§ 4312(a)(1)–(3), (e).

If the employee meets these requirements, the employer must offer the veteran either the position he would have held had his employment not been

---

[2] The statute's definition of "employer" includes a State, its agencies, and its political subdivisions. 38 U.S.C. §§ 4303(4)(A)(iii), (14).

interrupted by military service, or "a position of like seniority, status, and pay." §

4313(a)(2)(A). The employee does not forfeit this right to reemployment even if

the employee tells the employer before entering service that he "does not intend to

seek reemployment after completing service." 20 C.F.R. § 1002.88.

Because the sovereign immunity question involves an analysis of the level

of control exercised by the government during litigation, it is important to

understand the process by which the United States brings a USERRA action. If

the Secretary of Labor is unable to resolve what he believes to be a meritorious

USERRA claim, he must notify the former employee of his right to seek relief in a

judicial forum. *See* 38 U.S.C. § 4322(e). The former employee may then ask the

Secretary to refer the matter to the Attorney General of the United States (AG). §

4323(a)(1).

From that point, the AG takes control of the litigation on the veteran's

behalf. If the AG is "reasonably satisfied" that "the person on whose behalf the

complaint is referred is entitled to the rights or benefits sought," the AG "may

appear on behalf of, and act as attorney for, the person on whose behalf the

complaint is submitted and commence an action for relief under this chapter for

such person." *Id.* If a State is the employer, the action brought by the AG is

brought "in the name of the United States as the plaintiff in the action." *Id.* Even

6

when the United States is the plaintiff, the AG may seek victim-specific benefits such as "any loss of wages or benefits suffered by reason of such employer's failure to comply" with USERRA. § 4323(d)(1)(C). In such a case, the "compensation shall be held in a special deposit account and shall be paid, on order of the Attorney General, directly to the person." § 4323(d)(2)(B).

## IV. DISCUSSION

### A. SOVEREIGN IMMUNITY DOES NOT BAR THE UNITED STATES FROM ENFORCING USERRA

ADMH's first contention is that the district court erred in ruling that sovereign immunity does not bar this suit.[3] We disagree with ADMH, and hold that Alabama is not entitled to sovereign immunity.

"Our federal system is premised on the principle that the States possess a 'residuary and inviolable sovereignty.'" *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 280 (4th Cir. 2002) (quoting The Federalist No. 39, at 258 (James Madison) (I. Kramnick ed. 1987)). One of the principal attributes of this sovereignty is immunity: "It is inherent in the nature of sovereignty not to be amenable to suit of *an individual* without its consent." *Principality of Monaco v. Mississippi*, 292

---

[3] Whether the United States can sue a State to enforce USERRA on behalf of a particular veteran is a question of first impression for this Court.

7

U.S. 313, 324, 78 L. Ed. 1282, 1286–87, 54 S. Ct. 745, 748 (1934) (quoting The Federalist No. 81 (Hamilton) (emphasis added)).

If Roy Hamilton had been the plaintiff, it is undisputed that sovereign immunity would have barred his suit because a State cannot be sued by an individual without its consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67, 78–79 (1984) (noting that, unless a State has consented, the State is immune from suits brought in federal court by the State's own citizens or by citizens of other States); *see also Blatchford v. Native Village of Noatak*, 501 U.S. 775, 781; 111 S. Ct. 2578, 2582, 115 L. Ed. 2d 686, 695; *Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122, 134 L. Ed. 2d 252, 265 (1996); *Alden v. Maine*, 527 U.S. 706, 729, 119 S. Ct. 2240, 2254, 114 L. Ed. 2d 636, 662 (1999).

ADMH acknowledges that States do not have immunity from federal-court suits, brought and controlled by the United States, seeking to vindicate the general interests of the federal government. Appellant's Br. 26; *see United States v. Mississippi*, 380 U.S. 128, 140–41, 85 S. Ct. 808, 814–15, 13 L. Ed. 2d 717, 725 (1965) ("[N]othing in the [Eleventh Amendment] or any other provision of the Constitution prevents or has ever been seriously supposed to prevent a State's being sued by the United States. The United States in the past has in many cases

8

been allowed to file suits in this and other courts against States."). It is well-settled that States "surrendered their immunity from suit by the Federal Government" when they ratified the Constitution. *Chao*, 291 F.3d at 280; *see also United States v. Texas*, 143 U.S. 621, 644, 36 L. Ed. 285, 12 S. Ct. 488 (1892); *Principality of Monaco*, 292 U.S. at 329, 54 S. Ct. at 751, 78 L. Ed. at 1289; *Alden,* 527 U.S. at 755–56, 119 S. Ct at 2267, 144 L. Ed. 2d at 679.

However, ADMH contends that Hamilton, and not the United States, is the real plaintiff in this lawsuit. Thus, ADMH claims that the suit is functionally indistinguishable from a suit brought by an individual. ADMH argues that Alabama has not consented to suit by an individual and therefore Congress must be trying to abrogate the State's immunity through USERRA, in violation of *Seminole Tribe*. 517 U.S. at 72–73, 116 S. Ct. at 1131–32, 134 L. Ed. 2d at 277–78. In *Seminole Tribe*, the Supreme Court held that the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. *Id.* However, USERRA gives the federal government—and not individuals—the right to sue States in federal court to enforce federal law. USERRA does not purport to abrogate sovereign immunity and therefore does not violate *Seminole Tribe*. *Id.*

9

ADMH maintains that the DOJ should not be allowed to seek victim-specific relief from ADMH for Hamilton's benefit. According to ADMH, USERRA is a "transparent attempt by Congress . . . to evade the Supreme Court's decision . . . in *Seminole Tribe* by making the United States the nominal plaintiff in USERRA actions that are, in substance, no different from ones in which the individual serves as the nominal plaintiff." Appellant's Br. at 34.

ADMH attempts to evade established precedent that sovereign immunity does not apply by arguing that this lawsuit is essentially a private suit, which is subject to sovereign immunity. ADMH argues that Hamilton is the plaintiff "in substance rather than form" and thus his claims against ADMH must be barred. Appellant's Br. at 29. ADMH focuses on the role of the AG in acting as the individual's "attorney." It stresses that this means that the individual, and not the DOJ, has control over the litigation. Appellant's Br. at 33.

ADMH relies on *New Hampshire v. Louisiana* for the proposition that, in evaluating whether a state is entitled to sovereign immunity, courts must look to substance rather than form to determine who the plaintiff is. 108 U.S. 76, 2 S. Ct. 176, 27 L. Ed. 656 (1883).

In *New Hampshire*, the Court held that a State retained its sovereign immunity when sued by another State that is only nominally a plaintiff and the

10

suing State does not have an independent interest in the case. 108 U.S. at 88–89, 2 S. Ct. at 182, 27 L. Ed. at 661. In that case, Louisiana had defaulted on bonds owned by New Hampshire and New York citizens. *Id.* The Eleventh Amendment barred the individual citizens from suing Louisiana directly. New York and New Hampshire passed legislation to circumvent the Eleventh Amendment's barrier. *Id.* The two States passed statutes allowing citizens to assign their claims to the State, provided that the citizens paid all of the litigation expenses. *Id.* When citizens assigned their claims to the State, New York and New Hampshire attempted to sue Louisiana as the named plaintiff in the case. *Id.* The Supreme Court held that, because New York and New Hampshire did not have an independent interest in the case and were merely attempting to subvert the Eleventh Amendment to benefit their citizens, Louisiana retained its sovereign immunity. *Id.* at 90, 2 S. Ct. at 183, 27 L.Ed. at 662.

In a later case, the Supreme Court explained that the controlling consideration in *New Hampshire* "derived its force from the fact that the State was not seeking a recovery in its own interest, as distinguished from the rights and interests of the individuals who were the real beneficiaries." *Oklahoma ex rel. Johnson v. Cook*, 304 U.S. 387, 393, 58 S. Ct. 954, 957, 82 L. Ed. 1416, 1419 (1938) (following *New Hampshire* and explaining the "underlying point of the

11

decision"). Likewise, ADMH asserts that the government is "not seeking a recovery in its own interest," but is merely suing for the private benefit and interest of Hamilton. *Id.*

ADMH's reliance on *New Hampshire* is misplaced. Two important factors distinguish this case from *New Hampshire*. First, the United States—and not Hamilton—has control over the prosecution of the case. Second, the United States has an independent interest in enforcing USERRA.

In *New Hampshire*, the Supreme Court focused on the relative levels of control that the State and the individual exercised. The Court held that sovereign immunity barred suit because "while the suits are in the names of the States, they are under the actual control of individual citizens, and are prosecuted and carried on altogether by and for them." 108 U.S. at 89, 2 S. Ct. at 182, 27 L. Ed. at 661. The Supreme Court listed many factors to determine the individual's level of control and role as the "promoter and . . . manager of the suit." For example, courts must assess whether the individual "pays the expenses, is the only one authorized to conclude a compromise, and if any money is ever collected, [whether it goes to the individual] without even passing through . . . the treasury of the State." *Id.*

Here, the suit is firmly under the control of the executive branch. Although ADMH focuses on the meaning of the word "attorney" in the statute, USERRA does not give the individual the level of control that concerned the Supreme Court in *New Hampshire*. Hamilton had little control, if any, after the Attorney General accepted his suit. For example, the DOJ did not seek permission to file the lawsuit and Hamilton signed an agreement stating that the DOJ did not represent him. Moreover, the DOJ, and not Hamilton, had the right to decide whether to settle the case. Finally, whereas the individual paid all expenses in *New Hampshire*, here, "[n]o fees or court cost may be charged or taxed against" a veteran whose case is litigated by the DOJ. 38 U.S.C. § 4323(h). Clearly, the U.S. government, and not Hamilton, was in control of this case.

ADMH also argues that the United States does not have the requisite independent interest in this suit because it sought relief specific to Hamilton.[4] In *New Hampshire*, the Supreme Court emphasized that the State did not have an interest in prosecuting the case. It noted that the State was "nothing more nor less than a mere collecting agent" for the citizens who were the owners of the bonds at issue. 108 U.S. at 89, 2 S. Ct. at 182, 27 L. Ed. at 661.

---

[4] The DOJ also sought a prospective injunction. Clearly, the Federal Government's interest in Alabama's future compliance with USERRA is not a purely private interest. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 83 L. Ed. 2d 1016, 105 S. Ct. 1005 (1985). ADMH presents no issue relative to the injunctive relief granted except for the immunity issue we have rejected.

However, here, the United States has a significant interest in prosecuting the case in order to enforce federal law. As the Supreme Court noted in *Seminole Tribe*, one of the important "methods of ensuring the States' compliance with federal law" is allowing the DOJ to "bring suit in federal court against a State." 517 U.S. at 71 n.14, 116 S. Ct at 1131 n.14, 134 L. Ed. 2d at 276 n.14.

Further, it is well-settled that the United States may obtain victim-specific relief on behalf of a particular individual without offending the Eleventh Amendment. The Supreme Court stated in *Alden v. Maine* that:

> [t]he difference between a suit by the United States on behalf of the employees and a suit by the employees implicates a rule that the National Government must itself deem the case of sufficient importance to take action against the State; and history, precedent, and the structure of the Constitution make clear that . . . States have consented to the suits of the first kind but not of the second.

527 U.S. at 759–60, 119 S. Ct. at 2269, 144 L. Ed. 2d at 682.

A number of our sister circuits have rejected States' contentions that lawsuits brought by the United States on behalf of specific victims are simply private lawsuits masquerading in costume.

Specifically, the Fourth Circuit held that "where the immediate beneficiaries of the Secretary's suit are specific private individuals, the Federal Government has an interest in enforcing federal law, even as against the States," and therefore the Eleventh Amendment did not bar the lawsuit. *Chao v. Va. Dep't of Transp.*, 291

14

F.3d 276, 278–82 & n.4 (4th Cir. 2002); *see also United States v. Miss. Dep't of Pub. Safety,* 321 F.3d 495, 499 (5th Cir. 2003) (holding that "the federal government has the responsibility to determine when it is in the public interest to sue to vindicate federal law via victim-specific relief" and may sue a State to obtain relief authorized by the ADA without violating the Eleventh Amendment); *EEOC v. Bd. of Supervisors for the Univ. of La. Sys.*, 559 F.3d 270, 274 (5th Cir. 2009) ("The Supreme Court . . . has recognized that the EEOC plays an independent public interest role that allows it to seek victim-specific relief—even when such relief could not be pursued by the employee . . ."); *Bd. of Regents of the Univ. of Wis. Sys.*, 288 F.3d 296, 300–01 (7th Cir. 2002) (holding that sovereign immunity did not bar a lawsuit regardless of the relief sought by the EEOC); *Ky. Ret. Sys.*, 16 F. App'x 443, 448 (6th Cir. 2001) (rejecting the State's argument that the EEOC's action, seeking relief for a specific State employee, merely disguised a private lawsuit and was thus prohibited by the Eleventh Amendment).

Here, the United States has "deemed the case one of sufficient importance to take action against" ADMH to enforce the federal law on Hamilton's behalf. *Alden*, 527 U.S. at 760, 119 S. Ct. at 2269, 144 L. Ed. at 682. The United States has a clear and substantial interest in enforcing USERRA to achieve the law's goal of encouraging service in the armed forces. Therefore, we affirm the district

15

court's decision that Eleventh Amendment sovereign immunity does not bar the lawsuit.

B. THE DISTRICT COURT DID NOT ERR IN DETERMINING THAT ADMH VIOLATED THE REEMPLOYMENT PROVISIONS OF USERRA

On appeal, ADMH argues that the district court failed to make adequate findings of fact as required by Fed. R. Civ. P. 52. Rule 52 requires that the trial court "find the facts specially and state separately its conclusions of law thereon." ADMH claims that a remand is necessary because the district court did not specifically find that Hamilton had, in fact, resigned. We disagree and find that a remand is not necessary.

A trial court's findings must be sufficiently detailed to give an appellate court a clear understanding of the analytical process by which the findings were reached. *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1549 (11th Cir. 1987).

> [A] remand is not required if a complete understanding of the issues is possible in the absence of separate findings and if there is a sufficient basis for the appellate court's consideration of the merits of the case. Where the acts relied upon to support the judgment are in the record and are undisputed remand is unnecessary.

*Id.* (citing *Gulf Towing Co. v. Steam Tanker, AMOCO New York*, 648 F.2d 242, 245 (5th Cir. Unit B June 1981)).

16

When viewed as a whole, the court's findings provide "a sufficient basis for [our] consideration of the merits of the case." *Id.* The district court clearly found that Hamilton's absence was necessitated by his military service. 38 U.S.C. § 4312(a). The court found that Hamilton declined the transfer *after* he knew—and had notified his supervisor—that he was soon to be deployed. It also found that when he left for deployment, ADMH officials told him that they would continue to look for other opportunities for him. Moreover, the court found that Hamilton declined the transfer specifically because his military "activation was scheduled to occur about the time the transfer would have become effective." Thus, the district court's finding that military service caused Hamilton to be absent from ADMH is "sufficiently detailed" to give us a clear understanding of the district court's analysis. *Self*, 832 F.2d at 1549. Therefore, a remand is unnecessary.

ADMH also contends that the district court erred in ruling that ADMH violated USERRA when it did not promptly rehire Hamilton in 2005.[5] ADMH argues that Hamilton's absence from his ADMH job was "necessitated by" his refusal to transfer to a different facility and not by his military service. Therefore,

---

[5] ADMH argues alternatively that if Hamilton resigned on December 31, 2003, then his employment was for a "brief, nonrecurrent period" and that there was "no reasonable expectation that such employment [would] continue indefinitely or for a significant period." 38 U.S. C. § 4312(d)(1)(C). However, this argument is unpersuasive. The record clearly establishes that ADMH employed Hamilton for over sixteen years. Even if there was no "reasonable expectation that such employment [would] continue indefinitely," his employment was not for a "brief, nonrecurrent period."

17

ADMH contends that he did not have a right to reemployment under USERRA. The United States argues that Hamilton did not resign, and alternatively, that even if Hamilton had resigned, he still did not waive his reemployment rights under USERRA.

Under USERRA, an employee has reemployment rights if his "absence from a position of employment is necessitated by reason of service in the uniformed services." 38 U.S.C. 4312(a). Moreover, a "combination of motives does not preclude a finding that [the veteran] left his position in order to perform military duty. In the real world, motives are often mixed." *Lapine v. Wellesley*, 304 F.3d 90, 102 (1st Cir. 2002).[6]

Prior to declining the transfer, Hamilton notified his superiors that he would be deploying shortly. Hamilton never expressed an intent to resign from his job. Hamilton declined the transfer because he did not want to move and did not want the promotion. When Hamilton left for deployment on December 29, 2003, ADMH officials told him that they would continue to look for an acceptable placement for him. Regardless of Hamilton's reason for declining the transfer to

---

[6] ADMH argues that *Lapine* is not controlling because it involved USERRA's predecessor statute. That argument is not persuasive. In passing USERRA, Congress made it clear that the "extensive body of case law" under the predecessor statutes "would remain in full force and effect" to the extent it is consistent with USERRA. S. Rep. No. 203, 102d Cong., 1st Sess. 31 (1991).

Tuscaloosa, his declination "does not preclude a finding" that his absence from ADMH was necessitated by his military service. *Id.*

The district court did not clearly err in finding that Hamilton's declination of the transfer was not a resignation. Although he may have declined the transfer in part because of his desire not to move, this does not prevent a finding that his absence from his job at ADMH was "necessitated by his military service." Therefore, the court did not err in determining that Hamilton's absence from ADMH was necessitated by his military service.

## C. THE DISTRICT COURT DID NOT ERR IN AWARDING DAMAGES

The district court ordered ADMH to pay more than $25,000 for the wages and benefits that Hamilton lost because of ADMH's failure to rehire him promptly as USERRA requires. Without citing any authority, ADMH asserts that the United States must show that Hamilton would have taken a position if one had been offered.

However, ADMH mistakenly assigns this burden of proof to the employee. Under the plain language of USERRA, "the employer has a duty to offer the employee" a position. There is no requirement that the employee prove that he would have accepted the position had it been offered. 38 U.S.C. 4313(a)(2)(A); 20 C.F.R. § 1002.191. It would be inconsistent with the language and the purpose

19

of the statute to require the employee to prove that he would have taken the position if it had been offered.

Here, it is undisputed that ADMH did not offer Hamilton a position. ADMH cannot now avoid paying damages for violating USERRA by claiming that "it would have been an exercise in futility" to offer Hamilton a position to which he was entitled under the law. Therefore, Hamilton is entitled to damages for wages and benefits lost.

## CONCLUSION

The district court's order denying ADMH's motion to dismiss based on Eleventh Amendment sovereign immunity is **AFFIRMED**. The district court's findings that ADMH violated USERRA and that Hamilton is entitled to damages are **AFFIRMED**.